## STATE OF OKLAHOMA v. UNITED STATES CIVIL SERVICE COMMISSION.

### No. 3203.

Circuit Court of Appeals, Tenth Circuit.

Jan. 18, 1946.

Randell S. Cobb, Atty. Gen. (Mainard Kennerly, Asst. Atty. Gen., on the brief) for appellant.

Joseph M. Friedman, Sp. Asst. to the Atty. Gen. (John F. Sonnett, Asst. Atty. Gen., and Lawrence V. Meloy, Charles E. P. Crawley, attorneys, Civil Service Commission, and Robert Mandel, attorney, Department of Justice, all of Washington, D. C., on the brief), for appellee.

Before PHILLIPS, BRATTON and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

Section 12(a) of the Hatch Political Activity Act, as amended, 53 Stat. 1147, 54 Stat. 767, 18 U.S.C.A. § 61*l*(a), in presently material part, provides, "No officer or employee of any State or local agency

whose principal employment is in connection with any activity which is financed in whole or in part by loans or grants made by the United States or by any Federal agency shall * * * take any active part in political management or in political campaigns." The applicable part of Section 12(b) provides, "If any Federal agency charged with the duty of making any loan or grant of funds of the United States for use in any activity by any officer or employee to whom the provisions of subsection (a) are applicable has reason to believe that any such officer or employee has violated the provisions of such subsection, it shall make a report with respect thereto to the United States Civil Service Commission * * * Upon the receipt of any such report, or upon the receipt of any other information which seems to the Commission to warrant an investigation, the Commission shall fix a time and place for a hearing * * *. At such hearing * * * either the officer or employee or the State or local agency, or both, may appear with counsel and be heard. After such hearing, the Commission shall determine whether any violation of such subsection has occurred and whether such violation, if any, warrants the removal of the officer or employee by whom it was committed from his office or employment, and shall by registered mail notify such officer or employee and the appropriate State or local agency of such determination. If in any case the Commission finds that such officer or employee has not been removed from his office or employment within thirty days after notice of a determination by the Commission that such violation warrants his removal, or that he has been so removed and has subsequently (within a period of eighteen months) been appointed to any office or employment in any State or local agency of such State, the Commission shall make and certify to the appropriate Federal agency an order requiring it to withhold from its loans or grants to the State or local agency to which such notification was given an amount equal to two years' compensation at the rate such officer or employee was receiving at the time of such violation * * *. Notice of any such order shall be sent by registered mail to the State or local agency from which such amount is ordered to be withheld. The Federal agency to which such order is certified shall, after such order becomes final, withhold such amount in accordance with the

terms of such order." And the pertinent part of section 12(c) provides, "Any party aggrieved by any determination or order of the Commission under subsection (b) may * * * institute proceedings for the review thereof by filing a written petition in the district court of the United States for the district in which such officer or employee resides. * * * A copy of such petition shall forthwith be served upon the Commission, and thereupon the Commission shall certify and file in the court a transcript of the record upon which the determination or the order complained of was made. The review by the court shall be on the record entire, including all of the evidence taken on the hearing, and shall extend to questions of fact and questions of law. * * * The court shall affirm the Commission's determination or order * * * if the court determines that the same is in accordance with law. * * * The judgment and decree of the court shall be final, subject to review by the appropriate circuit court of appeals as in other cases, and the judgment and decree of such circuit court of appeals shall be final, subject to review by the Supreme Court of the United States on certiorari or certification as provided in section 239 and 240 of the Judicial Code, as amended. * * *"

The United States Civil Service Commission filed a letter of charges against France Paris and the State of Oklahoma in which it was charged that Paris, while chairman of the Democratic State Central Committee in Oklahoma, a political party office, held the office of a member of the Highway Commission of Oklahoma, an activity financed in part by loans and grants made by the United States and by a Federal agency thereof; that he was active in the political management of the Democratic Party; and that he assisted in the raising of funds on behalf of such party and in the giving of a banquet. Paris and the State filed separate answers, and a stipulation of facts was filed. It was stipulated that in February, 1942, Paris was elected chairman of the Democratic State Central Committee for his third term, and occupied such position until October, 1943, when he resigned; that he was appointed as a member of the State Highway Commission in January, 1943, and had held the position continuously since; that the activities of the highway department were financed in part by grants made by the Public Roads Administration of the United States; that a Victory

Dinner was held in Oklahoma City in June, 1943, for the purpose of raising funds for the Democratic National Committee and the Democratic State Committee; that the dinner netted the Democratic Party approximately $30,000; that it was under the general supervision of the governor of the state; that the details were handled by a committee appointed by the governor; that Paris was an ex officio member of the committee and advised with the governor and the committee concerning the dinner but was not active in planning and arranging it; that at the dinner, he called the meeting to order and introduced the toastmaster; that employees of the highway department received mimeographed sheets soliciting them to purchase tickets for the dinner at suggested prices, ranging from $5.00 to $25.00; that an employee of the highway department acted as treasurer of the funds received from the sales of tickets for the dinner; that such employee also kept books for the Democratic Party in the state; that about ten days before being appointed as a member of the highway commission, Paris closed the state headquarters of the Democratic State Central Committee; that they were later opened under the direct charge of the vice-chairman of the committee; and that the principal activity of the committee during 1943 was in connection with the Victory Dinner. Upon the stipulated facts, the Commission found and concluded that the service of Paris as chairman of the Democratic State Central Committee while a member of the State Highway Commission, with the incidental political activities outlined, constituted a violation of section 12(a), supra, and that his removal from the office of Highway Commissioner was warranted. A copy of the order was served on Paris and the State. Thereafter, the State filed its petition in the United States Court for Northern Oklahoma, the district in which Paris resided, seeking to have the order of the Commission vacated and set aside. The Commission answered, judgment was entered sustaining the order of the Commission, and the State appealed.

It is contended that the Act, as applied to state officers or employees, constitutes an attempt to regulate the internal affairs of the state and amounts to an invasion of the sovereignty of the state, in violation of the Tenth Amendment to the Constitution of the United States. The argument is that as a penalty for the violation of its terms, the Act directs the removal of the offending state officer or employee and forbids his appointment or employment in any other capacity for a period of eighteen months, and that therefore it undertakes to usurp a purely state function. It is said that the legislation in effect works the forfeiture of state offices and in that manner invades the powers of the state to create and maintain offices of government according to its own choice. It is the prerogative of a state to create and maintain offices of government according to its own choice, free from interference by the United States. But this Act does not invade the rights of the states in the untrammeled exertion of that attribute of sovereignty. It does not command the removal of a state officer, either by the Federal government or the state. There seems to be little room for confusion of thought when it is borne in mind that fundamentally considered the Act merely attaches conditions to the making of loans or grants to the states or their subdivisions, conditions reasonably designed and adapted to effectuate the purposes of the Act, and provides that on violation of the conditions the loans or grants shall be withheld pro tanto. A state is completely free to disregard the finding of the Commission, and to continue its officer or employee or to give him other employment. If that is done, the Act merely authorizes the United States to withhold to a specified extent funds of the loan or grant. It does not undertake to empower the United States itself to remove the officer or employee or to command the state to do so. A condition of that kind attached to the making of loans or grants does not infringe the sovereignty of the state. It does not amount to a usurpation of power, either in the form of objectionable coercion or other forbidden interference. Commonwealth of Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078; Steward Machine Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293.

The argument that the Act, as applied to the facts in this case, amounts to an unconstitutional delegation of authority is untenable. There can be no doubt that Congress had the power to provide by rigid and inflexible language in the Act itself that where a member of the highway commission of a state whose activity is financed in whole or in part by loans or grants made by the United States holds the

position of chairman of the state central committee of a political party, an amount of the loan or grant equal to the compensation of the office for two years shall be withheld. But instead of doing that, Congress entrusted to the Commission the administration of the Act under defined policies and established standards. Congress is not permitted to abdicate, or to transfer to others, the essential legislative functions with which it is vested by the Constitution. But legislation must quite frequently be adapted to conditions involving details with which in the very nature of things it is impractical for the legislative body to deal directly. There is no unconstitutional delegation of legislative or judicial authority where, as here, an Act of Congress lays down policies and establishes standards but leaves to a selected instrumentality of informed judgment and discretion the determination of facts and the reaching of conclusions based upon such facts (subject to judicial review as provided in section 12(c)), to which the declared policy of Congress is to apply. Union Bridge Co. v. United States, 204 U.S. 364, 27 S.Ct. 367, 51 L.Ed. 523; Gray v. Powell, 314 U.S. 402, 62 S.Ct. 326, 86 L.Ed. 301; National Broadcasting Co. v. United States, 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344; Sears, Roebuck & Co. v. Federal Trade Commission, 7 Cir., 258 F. 307, 6 A.L.R. 358.

■■ The further contention is that the Act is confined to pernicious political activities, and that Paris did not engage in activities of that kind. Stress is laid upon the title of the Act to support the contention in respect of the scope of the legislation. The title of the statute recites that it is an act to prevent pernicious political activities. While the title to an act may be taken into consideration as an aid to construction in case of doubt, it cannot add to or subtract from the plain meaning of the text. Resort to the title may be had only for the purpose of resolving doubt as to the meaning of the words used in the text in case of ambiguity. Goodlett v. Louisville & Nashville Railroad, 122 U.S. 391, 7 S.Ct. 1254, 30 L.Ed. 1230; Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas.1917B, 1168; Strathearn Steamship Co. v. Dillon, 252 U.S. 348, 40 S.Ct. 350, 64 L.Ed. 607; Fairport, Painesville & Eastern Railroad Co. v. Meredith, 292 U.S. 589, 54 S.Ct. 826, 78 L.Ed. 1446; Bengzon v. Secretary of Justice, 299 U.S. 410, 57 S.Ct. 252, 181 L.Ed. 312; Maguire v. Commissioner, 313 U.S. 1, 61 S.Ct. 789, 85 L.Ed. 1149. Section 12(a), supra, forbids any officer or employee of a state or local agency whose principal employment is in connection with any activity financed in whole or in part by loans or grants made by the United States to take any active part in political management or in political campaigns. The statute does not speak of pernicious political activity as distinguished from other kinds of political activity. It includes any active part in political management and any active part in political campaigns. That pivotal language is clear and free from doubt. There is no obscurity or uncertainty in the text to be illumined by reference to the title.

■ The remaining contention which calls for consideration is that the stipulated facts showed merely passive and inactive holding of the political chairmanship, that the drastic order of the Commission was not warranted, that the order was arbitrary and constituted an abuse of discretion, and that the court erred in sustaining it. It is said that the primary purpose of the Act was to discourage corrupt political practices by authorizing orders designed to effect the removal from public office or public employment of those who violate its provisions, and that removal should be effectuated only where the person has committed serious acts of commission against its provisions. As has already been said, section 12 (b) empowers the Commission to determine whether a violation has occurred, and, if so, whether removal from office or employment is warranted. Section 15, 18 U.S.C.A. § 61o, provides that the provisions prohibiting the taking of any active part in political management or in political campaigns "shall be deemed to prohibit the same activities on the part of such persons as the United States Civil Service Commission has heretofore determined are at the time this section takes effect prohibited on the part of employees in the classified civil service of the United States by the provisions of the. civil-service rules prohibiting such employees from taking any active part in political management or in political campaigns." And for a long time prior to the date on which the Act, supra, became effective, the Commission had consistently held that service on a political committee constituted a violation of the applicable civil-service rule and warranted removal

of the person from the position in the classified civil service. Thus Congress in effect provided in the Act itself that service on a political committee while an officer or employee of a state or local subdivision whose principal employment is in connection with an activity financed in whole or in part with funds furnished by the United States constitutes political management within the meaning of the Act and warrants removal from the office or the employment. That in substance is the command of the Act. Manifestly, the Commission had solid footing in the Act for the conclusion that removal of Paris from office was warranted. And section 12(c), supra, provides that in a proceeding of this kind, brought to review the action of the Commission, the determination or order shall be affirmed if it is in accordance with law.

The judgment of the district court is affirmed.