**F I L E D**

**PUBLISH**

**MAY 19 1997**

# UNITED STATES COURT OF APPEALS
# TENTH CIRCUIT

WILLIAM A. JOHNSTON and
VERNA LEE C. JOHNSTON,

     Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE,

     Respondent-Appellee,

=============================

JOHN A. MCNAMARA,

     Amicus Curiae.

No. 95-9006

---

Appeal from the UNITED STATES TAX COURT
(Tax Court No. 28135-92)

---

William A. Johnston and Verna Lee C. Johnston, Pro Se.

John A. McNamara, Hall & Evans, L.L.C., Colorado Springs, Colorado, Special
Counsel appointed by the Court as Amicus Curiae.

Jonathan S. Cohen (Loretta C. Argrett, Assistant United States Attorney General,
Richard Farber and Linda E. Mosakowski, Attorneys, Tax Division, Justice
Department, Washington, D.C. on the briefs), for Respondent-Appellee.

---

Before **SEYMOUR**, Chief Judge, **LOGAN** and **LUCERO**, Circuit Judges.

---

**SEYMOUR**, Chief Judge.

William A. Johnston and Verna Lee C. Johnston appeal from a judgment of the Tax Court upholding the Commissioner's notice of deficiency for federal income taxes due on their 1988 and 1989 joint returns.[1]  The deficiency noticed by the Commissioner included $11,913.31 in income tax credit claimed by the Johnstons under sections 46 and 48 of the Internal Revenue Code for sums spent in renovating a residential duplex owned and rented out by the Johnstons.  The Commissioner took the position that the Johnstons did not qualify for the tax credit because I.R.C. § 48(a)(3) excludes from the credit property used for lodging.  The Tax Court held for the Commissioner, concluding that the plain language and legislative history of the tax credit provisions support her interpretation.  We affirm.

---

[1]The Johnstons represented themselves in this appeal, and filed a lucid, well-argued brief with the court.  Due to the complexity of the statutory provisions involved here, we appointed counsel to brief and argue the issues in the case as amicus curiae.  For convenience, in this opinion we attribute to the Johnstons those arguments asserted on their behalf by the amicus.

# I.

## Background

The case was submitted to the Tax Court on fully stipulated facts. The sole question is whether expenditures on the renovation of residential rental property which is not a certified historic structure qualify for an investment tax credit. This is a question of law, which we review de novo. ABC Rentals of San Antonio, Inc. v. Commissioner, 97 F.3d 392, 395 (10th Cir. 1996).

The Johnstons purchased a residential duplex in 1980 in Salt Lake City, Utah, and rented it to tenants through 1987. The duplex was built in 1914, but it is not a certified historic structure. The Johnstons made extensive renovations to the duplex, for which they spent a total of $119,133.13. They claimed a ten percent (10%) rehabilitation tax credit pursuant to I.R.C. §§ 46(a)(3) and 46(b)(4)(A)(i)[2] on their 1988 and 1989 joint returns, $7,333.12 for 1988 and $4,580.19 for 1989.

---

[2]References to the provisions of the Internal Revenue Code throughout this opinion, where a date parenthetical is not indicated, refer to the text of such provisions in existence at the relevant time discussed in the body of the opinion. Section 48 of the I.R.C., as effective during the 1988 and 1989 tax years, is set out in relevant part in an appendix hereto.

## II.

## The Evolving Statutory Framework

In 1962, Congress created in section 38 of the Internal Revenue Code a broad tax credit for investment by business and industry. I.R.C. § 38, as enacted by Revenue Act of 1962, Pub. L. No. 87-834, § 2, 76 Stat. 960, 960-63. "[T]he purpose of the credit . . . [was] to encourage modernization and expansion of the Nation's productive facilities and to improve its economic potential by reducing the net cost of acquiring new equipment." H.R. CONF. REP. NO. 87-2508 (1962), reprinted in 1962 U.S.C.C.A.N. 3732, 3734. The amount of the credit for various types of investment was defined in I.R.C. § 46. The tax credit applied to a wide range of investments in productive property such as tools, machinery, and other equipment, I.R.C. § 48(a)(1), but it did not apply to buildings, id. §§ 48(a)(1)(A), (B). The tax credit generally did not apply to investments in equipment for structures used to furnish lodging, id. § 48(a)(3), although a few exceptions were carved out, most notably for hotels, id. § 48(a)(3)(B).

In 1978, Congress amended the investment tax credit to allow for the first time a credit for investments in buildings. Revenue Act of 1978, Pub. L. No. 95-600, § 315, 92 Stat. 2763, 2828-29. New sections 48(a)(1)(E) and 48(g) provided

a credit for the rehabilitation of buildings more than 20 years old.[3]  However,

Congress continued to exclude from the tax credit buildings used for lodging;

thus, the credit applied to rehabilitation expenditures "for all types of business

and productive buildings, except those, such as apartments, which are used for

residential purposes."  H.R. CONF. REP. NO. 95-1800, at 226 (1978), reprinted in

1978 U.S.C.C.A.N. 7198, 7227.  In 1981, Congress extended the tax credit to

investments to rehabilitate certified historic structures used for residential rental

property.  I.R.C. § 48(a)(3)(D), as enacted by Economic Recovery Tax Act of

1981, Pub. L. No. 97-34, § 212(c), 95 Stat. 172, 239.  The parties agree that prior

to 1986, an investment tax credit was provided only for renovation of those

residential buildings which were certified historic structures.

In 1986, Congress amended the definition in section 48(g)(2) of "qualified

rehabilitation expenditures" to explicitly list "residential rental property."  I.R.C.

§ 48(g)(2)(A)(i), as amended by Tax Reform Act of 1986, Pub. L. No. 99-514, §

251(b), 100 Stat. 2085, 2184-85.  The Johnstons contend that this 1986

amendment brought their renovation expenses within the scope of the investment

tax credit.  It is undisputed that the Johnstons' investments in renovations are

---

[3]The age requirements for rehabilitation credit for a building other than a certified historic structure have been modified several times.  For the Johnstons' tax years, a noncertified building was required to be in use before 1936 in order to qualify for the credit.  I.R.C. § 48(g)(1)(B).

"qualified rehabilitation expenditures" as defined by section 48(g) of the Code, and that the investment was made in a "qualified rehabilitated building" as defined by the same section. The sole question before us is whether section 48(a)(3), the lodging exclusion, operates to exclude the Johnstons' property from the scope of the tax credit otherwise provided for in section 48(a)(1)(E).

## III.

### Analysis

A set of interlocking statutory provisions[4] determine if the Johnstons' building rehabilitation is "section 38 property" eligible for an investment tax

---

[4]The text of specific provisions is described throughout. We provide a capsule summary of the provisions here to aid the reader. In this table, we indicate the section number, its date of enactment, and its purpose in the statutory scheme:

| | |
|---|---|
| § 38 [1962]: | establishes an investment tax credit |
| § 48(a)(3) [1962]: | excludes from credit property used to furnish lodging |
| § 48(a)(1)(E) [1978]: | extends the credit to "qualified rehabilitation" of buildings |
| § 48(g) [1978]: | defines "qualified rehabilitation" |
| § 48(a)(3)(D) [1981]: | extends credit to rehabilitation of residential certified historic property by exempting from the lodging exclusion |
| § 48(g)(2)(A)(i)(II) [1986] | defines "qualified rehabilitation" to include "residential rental property" |

credit.[5]  First, section 48(g) defines "qualified rehabilitation expenditures" to include "residential rental property."  Second, section 48(a)(1) applies the investment tax credit, "[e]xcept as provided in this subsection," to "that portion of the basis which is attributable to qualified rehabilitation expenditures (within the meaning of subsection (g))."  Finally, section 48(a)(3), which we refer to as the lodging exclusion, excludes from the tax credit "[p]roperty which is used predominantly to furnish lodging," with the principal exceptions of hotels and certified historic structures.  To qualify as section 38 property entitled to an investment tax credit, an expenditure to rehabilitate older buildings must thus satisfy two distinct requirements: (1) the rehabilitative expenditure must meet the criteria established in section 48(g), referenced in section 48(a)(1)(E); and (2) the expenditure must not be excluded by any other provision of section 48(a).  The contested issue is whether the Johnstons' property, otherwise eligible under sections 48(g) and 48(a)(1), is excluded by the operation of the section 48(a)(3) lodging exclusion.

The Johnstons' duplex is rented to tenants.  The duplex is residential property used for lodging, and does not meet any of the exceptions to the lodging

---

[5]The amount of the credit is defined in section 46.  In 1988, the credit for qualified rehabilitation expenditures was 20 percent for certified historic structures, and 10 percent for qualified rehabilitated buildings other than certified historic structures.  I.R.C. §§ 46(a)(3), 46(b)(4).

exclusion.  On the face of the statute, therefore, the Johnstons' rehabilitation expenditures do not qualify for the tax credit.  The Johnstons attempt to avoid this result by reading the lodging exclusion to be inapplicable to their situation.  They advance two lines of argument.  First, they assert that the lodging exclusion was not intended to cover this type of investment.  Second, they contend that the language and intent of section 48(g), as amended in 1986, conflicts with the lodging exclusion, and that this conflict should be resolved in favor of the taxpayer.

## A. The Lodging Exclusion

The Johnstons make several arguments against the applicability of the lodging exclusion.  First, they maintain that the term "lodging" applies only to buildings used to house transients, not longer-term rentals.  Contrary to the Johnstons' inference, the legislative history indicates that Congress has consistently understood the term "lodging" to include residential property generally, not just that used to house transients.  In discussion of a draft of the 1962 bill, the committee explanation used the terms "lodging" and "residential" nearly interchangeably: "'Lodging, or residential real estate, . . . [is] excluded on the grounds that this property for the most part is used by consumers rather than in production.'" LaPoint v. Commissioner, 94 T.C. 733, 736 (1990) (quoting

STAFF OF JOINT COMM. ON INTERNAL REVENUE , 87TH CONG., DISCUSSION DRAFT OF REVENUE BILL OF 1961 9 (J. Comm. Print 1961)).  In 1978, Congress extended the tax credit to buildings for the first time, stating: "The bill extends the investment credit to rehabilitation expenditures incurred in connection with existing buildings used in all types of business or productive activities except buildings, such as apartments, which are used for residential purposes."  H.R. REP. NO. 95-1445, at 86-87 (1978), reprinted in 1978 U.S.C.C.A.N. 7046, 7121. The report went on to note that rehabilitation of hotel buildings would be eligible: "Buildings used for lodging will not generally be eligible (sec. 48(a)(3)). However, the exception for lodging facilities would not apply to hotels and motels where the predominant portion of the accommodations is used by transients." Id. at 87 n.1.  These quotations indicate that Congress recognized the lodging exclusion applied principally to residential units occupied by nontransients. Moreover, if we were to adopt the Johnstons' reading, the lodging exclusion would be rendered a virtual nullity in light of section 48(a)(3)(B)'s exception of hotels and motels from the general lodging exclusion.

The Johnstons also contend that section 48(a)(3)'s lodging exclusion was not intended to apply to real property.  We are unable to find support for this distinction in the text of the statute.  When section 48(a)(3) was included in the original law in 1962, the investment tax credit did not apply to buildings; the

lodging exclusion thus initially operated only to exclude investments in equipment used in the furnishing of lodging. In 1978, Congress extended the tax credit to certain real property by adding sections 48(a)(1)(E) and 48(g). Congress did not, however, exempt paragraph E from the general section 48(a) reservation ("[e]xcept as provided in this subsection"); therefore the section 48(a)(3) lodging exclusion applies to rehabilitation expenditures. Nothing in the language of section 48(a)(3) suggests that it refers only to equipment. Moreover, in 1981, Congress added section 48(a)(3)(D), exempting from the lodging exclusion certified historic structures "to the extent of that portion of the basis which is attributable to qualified rehabilitation expenditures." The phrase "qualified rehabilitation expenditures" applies only to building renovations defined in section 48(g), not investments in equipment. The addition of section 48(a)(3)(D) would have been irrelevant to the extension of the tax credit to certified historic buildings absent congressional understanding that section 48(a)(3) applied to real property and would otherwise exclude buildings used for lodging from the tax credit. The meaning of the term "lodging," in its statutory context, is not ambiguous.

## B. The 1986 Amendment

The Johnstons alternatively contend that if the lodging exclusion was otherwise relevant, it was rendered inapplicable by the 1986 alteration of section 48(g) to include "residential rental property" in the definition of "qualified rehabilitation expenditures." I.R.C. § 48(g)(2). They suggest that this created a conflict between the plain language of section 48(g) and the language of section 48(a)(3), and that Congress intended for section 48(g) to govern and to give tax credit eligibility to rehabilitation of residential rental property.

The suggested conflict between subsections (a) and (g) is more apparent than real. Sections 48(g) and 48(a)(3) are not to be read in the disjunctive, as the Johnstons would have us do, but in the conjunctive. Section 48(g) defines a broad category of expenditures which are *potentially* eligible for a tax credit, as provided for in section 48(a)(1)(E). But section 48(a)(3)'s negative language-- "[p]roperty . . . used predominantly to furnish lodging . . . shall not be treated as section 38 property"-- is intended to exclude property that might otherwise fall within the category eligible for the tax credit, and section 48(a)(1) by its own terms incorporates the limitations of section 48(a)(3).[6]

---

[6]We note that a conflict would exist, and a much more difficult question of congressional intent would be presented, if the exclusion in section 48(a)(3) operated to deny credit to *all* property encompassed in residential rental property as used in section 48(g). In this case, however, some residential rental property,

(continued...)

There is no conflict or ambiguity merely because several closely interlocking statutory provisions must be read together to determine if a given expenditure is eligible for a credit. There is nothing ambiguous about a statutory scheme which defines a broad category of investment, I.R.C. § 48(g); provides that the category shall be eligible for a tax credit except as expressly excluded, id. § 48(a)(1); provides for a specific exclusion, id. § 48(a)(3); and then carves a number of narrow exceptions to that exclusion, id. §§ 48(a)(3)(A) - (D). To qualify for a credit, the Johnstons must do more than show that their expenditure falls within the category of expenditures defined in section 48(g) as potentially eligible for the credit. Notwithstanding the inclusion of residential rental property in section 48(g), the Johnstons do not qualify for a tax credit if their property is excluded by other provisions of section 48(a). Taken together, sections 48(g) and 48(a)(3) exclude the Johnstons' duplex from the tax credit because it is used predominantly for lodging. Although the statutory scheme is complex, the statute's language is plain on its face.[7]

---

[6](...continued)
that in hotels and certified historic structures, is eligible for the tax credit. I.R.C. §§ 48(a)(3)(B), (D).

[7]Because we find the statutory language--although convoluted--plain on its face, we need not address the import of the Treasury regulations applying these sections, 26 C.F.R. § 1.48-1(h), except to conclude that the regulations are a permissible interpretation of the statute insofar as they deny investment tax credit for rehabilitation of noncertified residential buildings.

The 1986 amendment did not create any ambiguity on the face of the statute. Furthermore, the 1986 legislative history indicates that no substantive change was intended with respect to the general ineligibility of residential property for the credit. Thus, the Senate Report accompanying the 1986 amendments noted that "*[a]s under present law*, the 10-percent credit for the rehabilitation of buildings that are not certified historic structures is *limited to nonresidential buildings*." S. REP. NO. 99-313, at 754 (1985), reprinted in 1986-3 C.B. 1, 754 (emphasis added).

The Johnstons advance several other arguments about the legislative structure and purpose. They argue that the title of 48(g), which refers to "*Special rules for qualified rehabilitated buildings*," I.R.C. § 48(g) (emphasis added), is informative. However, "under the general rules of statutory interpretation, the title to a statutory provision is not part of the law itself, although it can be used to interpret an ambiguous statute." United States v. Glover, 52 F.3d 283, 286 (10th Cir. 1995) (citing Oklahoma v. United States Civil Serv. Comm'n, 153 F.2d 280, 283 (10th Cir. 1946), aff'd, 330 U.S. 127 (1947)). The Johnstons may rely on the section title only to clarify an ambiguous statute, not to create an otherwise nonexistent conflict.

The Johnstons contend that the reading of the lodging exclusion we adopt here conflicts with the congressional purpose, first expressed in the extension of

the tax credit to buildings in 1978, to restore deteriorated buildings in the country's urban centers. In 1978, Congress expressed concern "about the declining usefulness of existing, older buildings throughout the country, primarily in central cities and older neighborhoods of all communities." H.R. REP. NO. 95-1445, at 86 (1978), reprinted in 1978 U.S.C.C.A.N. 7046, 7121. Although Congress's extension of the credit to buildings was intended to address this problem, it did so only with respect to *nonresidential* buildings (and those buildings, such as hotels, which were exempted from the lodging exclusion). Id. at 86-87. In keeping with the original purposes of the credit, Congress has never used the section 38 tax credit to advance a general goal of rehabilitating *residential* buildings--with the notable exception of certified historic buildings. There is no evidence that a significant change was intended with the 1986 amendments.

The Johnstons also suggest that under the current version of the law they would be entitled to the tax credit, and that Congress' 1990 modifications to the investment tax credit clarify Congress' view that such a credit for residential rehabilitation was also provided in the 1986 version of the law. Even if we were persuaded to rely on the actions of a subsequent Congress to ascertain the meaning of the prior law, the Johnstons' legal premise is mistaken. Although the current version of the Code continues to include "residential rental property" as

eligible to be a "qualified rehabilitation expenditure," I.R.C. § 47(c)(2) (1994), the current version also retains the exclusion from the credit for "property which is used predominantly to furnish lodging," id. § 50(b)(2). Contrary to the Johnstons' suggestion, Congress did not eliminate the lodging exclusion in 1990, but simply shifted its location.

**IV.**

**Conclusion**

Since the first extension of the section 38 tax credit to buildings in 1978, Congress has consistently limited the credit to nonresidential buildings and those residential buildings which are specifically exempted from the lodging exclusion in section 48(a)(3). Nothing in the text or history of the 1986 amendments suggests that Congress intended to expand the section 38 tax credit to noncertified residential rehabilitation, or to restrict the scope of the lodging exclusion. When Congress amended the statute in 1981 to extend the credit to renovation of certified historic residential buildings, it effected this change by amending section 48(a)(3) to remove certified historic structures from the reach of the lodging exclusion. We are convinced that if Congress had intended in 1986 to extend the credit broadly to residential renovations, it would have effected this intent by

-16-

modifying the lodging exclusion.

Based on the forgoing, we **AFFIRM** the judgment of the Tax Court.

# APPENDIX

Section 48 of the Internal Revenue Code defines property eligible for the investment tax credit established in section 38 as follows:

(a) Section 38 property
(1) In general
Except as provided in this subsection, the term, "section 38 property" means--

. . . .

(E) in the case of a qualified rehabilitated building, that portion of the basis which is attributable to qualified rehabilitation expenditures (within the meaning of subsection(g)) . . . .

. . . .

(3) Property used for lodging
Property which is used predominantly to furnish lodging or in connection with the furnishing of lodging shall not be treated as section 38 property. The preceding sentence shall not apply to--

(A) nonlodging commercial facilities which are available to persons not using the lodging facilities on the same basis as they are available to persons using the lodging facilities,

(B) property used by a hotel or motel in connection with the trade or business of furnishing lodging where the predominant portion of the accommodations is used by transients,

(C) coin-operated vending machines and coin-operated washing machines and dryers, and

(D) a certified historic structure to the extent of that portion of the basis which is attributable to qualified rehabilitation expenditures.

. . . .

(g) Special rules for qualified rehabilitated buildings

For purposes of this subpart--

. . . .

(2) Qualified rehabilitation expenditure defined

For purposes of this section--

(A) In general

The term "qualified rehabilitation expenditure" means any amount properly chargeable to capital account--

(i) for property for which depreciation is allowable under section 168 and which is--

(I) nonresidential real property,

(II) residential rental property,

(III) real property which has a class life of more than 12.5 years, or

(IV) an addition or improvement to property described in subclause (I), (II), or (III), and

(ii) in connection with the rehabilitation of a qualified rehabilitated building.

I.R.C. § 48 (emphasis added).