AMERICAN AIRLINES, INC., PETITIONER *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 15957–11.          Filed January 13, 2015.

P is a domestic corporation operating as an airline, and its foreign branches remunerate its foreign flight attendants to staff P's South American routes. P's South American routes include flights from South America to Miami and vice versa. During the examination for P's taxable periods 2003 and 2004, P and R disputed whether P was liable for employment taxes associated with the remuneration paid to the foreign flight attendants by its foreign branches. P asserted that it was not liable for employment taxes with respect to the foreign flight attendants because (1) P had never treated the foreign flight attendants as employees, and (2) the "business visitor exception" applied and/or relief was available under the Revenue Act of 1978 (RA '78), Pub. L. No. 95–600, sec. 530, 92 Stat. at 2885, as amended. R rejected P's positions and assessed employment taxes for those periods. R also issued a notice of deficiency raising an alternative income tax theory which R contends will apply if it is ultimately decided that P is not liable for employment taxes under I.R.C. subtitle C. P timely filed a petition in response to the notice of deficiency determining R's alternative income tax adjustment and in response to R's denial of P's RA '78 sec. 530 claim. The parties dispute whether this Court has jurisdiction under I.R.C. sec. 7436(a) to determine P's employment tax liabilities. I.R.C. sec. 7436(a) provides in pertinent part that "[i]f, in

24

connection with an audit of any person, there is an actual controversy involving a determination by the Secretary as part of an examination that * * * such person is not entitled to the treatment under subsection (a) of section 530 of the Revenue Act of 1978 * * *, the Tax Court may determine whether such a determination by the Secretary is correct and the proper amount of employment tax under such determination." R contends that this Court lacks jurisdiction because RA '78 sec. 530 is inapplicable when R does not make a determination of worker classification. P asserts that this Court has jurisdiction because R determined that P was not entitled to RA '78 sec. 530 relief. *Held*: R made a determination which provides a basis for our jurisdiction to determine whether P is entitled to relief under RA '78 sec. 530 with respect to remuneration paid to P's foreign flight attendants by its foreign branches. *Held*, *further*, R's motion for partial summary judgment will be denied. *Held*, *further*, P's motion for partial summary judgment will be granted in part.

*Mary Bell Handley Hevener*, *Robert R. Martinelli*, *Robert H. Albaral*, and *David Gerald Glickman*, for petitioner.

*Jeremy H. Fetter*, *Shelley Turner Van Doran*, and *Linda P. Azmon*, for respondent.

### OPINION

PARIS, *Judge*: This case is before the Court on the parties' cross-motions for partial summary judgment under Rule 121.[1] The issue for decision in the partial summary judgment is whether the Court has jurisdiction pursuant to section 7436(a) over respondent's imposition of employment taxes for taxable periods 2003 and 2004. The Court holds that it has jurisdiction.

### *Background*

The record establishes and/or the parties do not dispute the following. Petitioner was a Delaware corporation with its principal place of business in Fort Worth, Texas, when it filed the petition.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

A. *Petitioner's Business and Petitioner's Workers*

Petitioner is a subsidiary of AMR Corp., one of the largest commercial airlines in the world. Petitioner has South American air route authority, among others, and runs the routes and operations in four South American countries: Argentina, Chile, Colombia, and Peru (South American routes). The South American routes include flights that originate and terminate in South America without making landfall in the United States, as well as flights between South American cities and Miami, Florida. The South American routes do not involve any city or airport in the United States besides Miami.

This case involves petitioner's foreign flight attendants who staff the South American routes. The foreign flight attendants are domiciled in Argentina, Chile, Colombia, or Peru. The foreign flight attendants who work on flights that originate or terminate in Miami are issued restrictive C–1/D combined transit and crewman visas.[2]

The foreign flight attendants who work on flights between South America and Miami spend minimal time in the United States. When they are working on a flight to or from Miami, time in the United States includes pre- and post-flight time, flight time in U.S. airspace, rest time in the United States after a flight to Miami, and FAA-mandated training at least once per year. The foreign flight attendants typically leave the United States within 12 hours of arrival and nearly always leave within 24 hours of arrival. They currently are paid on a "block-to-block" basis, meaning that they are compensated only for the period beginning when the aircraft pushes off from the blocks of the departure gate and ending

---

[2] C–1 and D visas are nonimmigrant visas. Holders of these visas have not been authorized by the Department of Homeland Security (DHS) to work in the United States. *See* 8 U.S.C. sec. 1101(a)(15)(D)(i) (2012); *see also* 8 C.F.R. sec. 274a.12(c)(17)(iii) (2011) (listing classes of aliens who may apply for authorization for work in the United States and including only foreign airline employees who have been issued B–1 visas); Social Security Administration's Program Operations Manual System RM 10211.420G.3 (classifying holders of C–1 and D visas as nonimmigrants who may not work and cannot apply for employment authorization). Generally, DHS must authorize nonimmigrant aliens a classification permitting work in the United States to obtain a Social Security number. 20 C.F.R. sec. 422.105 (2004).

when it arrives at the blocks of the destination gate. The foreign flight attendants are uncompensated for any other time they are required to be at work, including pre- and post-flight time and training sessions.

The foreign flight attendants were hired by petitioner's foreign branches (not subsidiaries) in the respective South American countries, and the branches manage the foreign flight attendants and pay their salaries. Petitioner's domestic payroll headquarters in Tulsa, Oklahoma, does not participate in the foreign branch payroll. The foreign branches are responsible for issuing the foreign flight attendants' checks (which are paid in the local foreign currency) and withholding taxes under the law of the country of origin. The foreign branches withhold only the country of origin's income taxes and its equivalent social security taxes if applicable.

Petitioner originally acquired the South American routes around 1990 from the now-dissolved Eastern Airlines. Petitioner continued Eastern Airlines' practice of foreign branch withholding and has never withheld U.S. income or FICA taxes from the foreign flight attendants' salaries. Moreover, petitioner has never paid employment taxes, including FICA or FUTA taxes, with respect to the foreign flight attendants. The foreign flight attendants have never submitted Forms W–4, Employee's Withholding Allowance Certificate, nor has petitioner ever issued Forms W–2, Wage and Tax Statement, to the foreign flight attendants.

B. *1992–96 Audit*

Initially petitioner's returns for tax periods 1992–96 were audited. The focus of respondent's audit was petitioner's potential liability for employment taxes[3] relating to the foreign flight attendants. Petitioner, then as now, contended that it was not obligated to pay employment taxes with respect to the foreign flight attendants because petitioner was entitled to "section 530 relief". Respondent's Appeals Office (Appeals) fully conceded the employment tax liabilities

---

[3] In this case, the Court uses the term "employment taxes" as it is defined by sec. 7436(e) to refer to taxes imposed pursuant to subtitle C of the Internal Revenue Code, including taxes imposed under secs. 3402 (Federal income tax withholding), 3102 and 3111 (FICA tax), and 3301 (FUTA tax).

for the 1992–96 tax periods pursuant to section 530 of the Revenue Act of 1978 (RA '78), Pub. L. No. 95–600, 92 Stat. at 2885, as amended.[4] In the course of the audit, Appeals created an administrative file, entitled the Appeals Case Memorandum, summarizing petitioner's and respondent's positions and explaining its conclusions. Petitioner obtained the Appeals Case Memorandum for the 1992–96 audit through a Freedom of Information Act request. The Appeals Case Memorandum states that petitioner is entitled to RA '78 sec. 530 relief for taxable periods 1992–96 and should be entitled to relief from employment taxes for workers in substantially similar positions for other periods. *See* RA '78 sec. 530(a)(2)(B). At the close of the audit respondent agreed not to audit petitioner's returns on this issue for tax periods 1997–2002.

## C. *2003–04 Audit*

Respondent conducted an audit for petitioner's 2003 and 2004 taxable periods. The focus of the examination was substantially similar to that of the 1992–96 audit. Petitioner contended that it was not liable for employment taxes or the mandatory 30% withholding tax on nonresident aliens under section 1441[5] with respect to the foreign flight attendants' salaries because the "business visitor exception"[6] and/or RA

---

[4] The Revenue Act of 1978 (RA '78), Pub. L. No. 95–600, sec. 530, 92 Stat. at 2885, as amended, provides in relevant part:

(a) Termination of Certain Employment Tax Liability.—
(1) In general.—If—
(A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period, and
(B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee, then, for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.

[5] Sec. 1441 requires, relevantly, that "all persons" who make payments to nonresident aliens of specified items constituting U.S. source income must withhold 30% of the gross income unless an exception or a treaty provision applies.

[6] The business visitor exception relieves compensation for labor or personal services performed in the United States from being categorized as

'78 sec. 530 relief applied. In connection with the 2003–04 examination, respondent issued Technical Advice Memorandum (TAM) 201014051 on December 18, 2009. The TAM concluded that petitioner was liable for employment taxes with respect to the remuneration paid to foreign flight attendants for services performed in the United States unless the "business visitor exception" applied pursuant to sections 861(a)(3) and 864(b)(1). Because the employment tax regime under subtitle C applied (whether or not the business visitor exception waived withholding requirements), the TAM held that the flight attendants' remuneration was not subject to withholding under section 1441. *See* sec. 1.1441–4(b)(1), Income Tax Regs. Moreover, the TAM stated that "entitlement to relief under section 530 is not properly at issue in this case" because the case did not involve a worker classification.[7]

Respondent's exam team and petitioner did not reach an agreement, and respondent sent petitioner a 30-day letter on February 3, 2010. On March 11, 2010, petitioner timely sent a formal protest challenging the 30-day letter on the basis of petitioner's continuously maintained position that it is eligible for RA '78 sec. 530 relief with respect to the remuneration paid to the foreign flight attendants by the foreign branches for services performed in the United States. Petitioner and its representatives had several conferences with Appeals but did not settle the case. As in the first audit, Appeals created an Appeals Case Memorandum, this time stating: "The classification of the NRA flight attendants (under section 530) is not relevant in this case, other than it was cited by Appeals as a basis for granting complete relief in a prior cycle. Accordingly, although Appeals has concluded

U.S. source income if: (1) the labor or services are performed by a nonresident alien who is present in the United States 90 days or less during the taxable year; (2) the compensation does not exceed $3,000; and (3) the labor or services are performed, relevantly, for a foreign branch of a domestic corporation. Sec. 861(a)(3).

[7] The TAM stated, and respondent contends, that petitioner has not in any way affirmatively treated the individuals as nonemployees, and therefore respondent is not attempting to reclassify them from nonemployees to employees and RA '78 sec. 530 relief is not relevant. Petitioner claims in regard to the foreign flight attendants that RA '78 sec. 530 relief may be available whether or not there has been an employee classification.

that entitlement to relief under section 530 is not properly at issue in this case, it has been addressed since it was the basis for concession when last considered."

At this point respondent took a bifurcated approach to petitioner's tax liabilities. On April 14, 2011, respondent sent petitioner a notice of deficiency determining that pursuant to section 1441 petitioner was liable for a 30% withholding tax on the foreign flight attendants' U.S. source income for 2003 and 2004. The deficiencies totaled $796,654. Respondent did not issue a formal notice of determination of worker classification with respect to employment taxes. However, on April 25, 2011, respondent assessed employment taxes under subtitle C in the amounts of $549,810.73 for liabilities from Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, and $3,302,226.76 for liabilities from Form 941, Employer's Quarterly Federal Tax Return, plus interest and penalties, for the 2003 and 2004 taxable periods. Petitioner timely filed a petition with this Court on July 7, 2011.

Petitioner paid the assessed employment taxes on May 9, 2011. Petitioner filed a timely administrative refund claim that was denied by Appeals on August 22, 2013. The notice of disallowance said that petitioner could seek review in either a U.S. District Court or the U.S. Court of Federal Claims within two years of the notice. To the best of the Court's knowledge, petitioner has not filed a refund claim in either court to date.

Respondent asserts that the determinations reflected in the notice of deficiency, although it was issued first, is a secondary, alternative position to protect the Government's interest if respondent's assessment of employment taxes is successfully challenged by petitioner in an appropriate refund forum. Respondent agrees that if subtitle C applies, section 1441 is automatically inapplicable. *See* sec. 1.1441–4(b)(1), Income Tax Regs.

In the petition, petitioner challenges respondent's determinations under section 1441 (the only determinations reflected in the notice of deficiency) and also asserts that this Court has jurisdiction to decide whether petitioner is liable for employment taxes under subtitle C even though respondent has not issued a notice of determination of worker classification. On September 6, 2013, petitioner filed

a motion for partial summary judgment asking the Court to hold that it has jurisdiction over both the section 1441 liabilities on the basis of the notice of deficiency and the employment tax liabilities on the basis that respondent made a determination with respect to those employment taxes. On December 16, 2013, respondent filed his own motion for partial summary judgment asserting that the Court does not have jurisdiction over the employment tax liabilities because respondent did not issue a notice of determination of worker classification.

## *Discussion*

The Tax Court is a court of limited jurisdiction and may exercise jurisdiction only when Congress has expressly authorized it to do so. *See* sec. 7442; *Breman v. Commissioner*, 66 T.C. 61, 66 (1976); *see also* Rule 13(b). The Court has jurisdiction to determine whether it has jurisdiction over a particular case. *Kluger v. Commissioner*, 83 T.C. 309, 314 (1984). Moreover, the Court's jurisdiction cannot be enlarged by the parties' agreement, or waiver, or failure to object. *Romann v. Commissioner*, 111 T.C. 273, 281 (1998).

A. *Section 7436(a)*

The parties disagree about the scope of the Court's jurisdiction under section 7436(a). Section 7436 was enacted as part of the Taxpayer Relief Act of 1997, Pub. L. No. 105–34, sec. 1454(a), 111 Stat. at 1055, and grants the Court limited jurisdiction over cases involving employment taxes imposed under subtitle C. Section 7436(a), as amended by the Consolidated Appropriations Act, 2001, Pub. L. No. 106–554, sec. 314(f), 114 Stat. at 2763A–643 (2000), provides:

SEC. 7436(a). CREATION OF REMEDY.—If, in connection with an audit of any person, there is an actual controversy involving a determination by the Secretary as part of an examination that—

(1) one or more individuals performing services for such person are employees of such person for purposes of subtitle C, or

(2) such person is not entitled to the treatment under subsection (a) of section 530 of the Revenue Act of 1978 with respect to such an individual,

upon the filing of an appropriate pleading, the Tax Court may determine whether such a determination by the Secretary is correct and the proper amount of employment tax under such determination. Any such redeter-

mination by the Tax Court shall have the force and effect of a decision of the Tax Court and shall be reviewable as such.

As the Court has noted previously: "[I]n response to the expressed intent of Congress to provide a convenient, prepayment hearing, this Court and the Courts of Appeals have given the jurisdictional provisions a broad, practical construction rather than a narrow, technical meaning." *Lewy v. Commissioner*, 68 T.C. 779, 781 (1977) (fn. refs. omitted). Therefore, where a statute is capable of various interpretations, the Court is inclined to "adopt a construction which will permit the Court to retain jurisdiction without doing violence to the statutory language." *Smith v. Commissioner*, 140 T.C. 48, 51 (2013).

B. *Section 7436(a)(1) and (2)*

Petitioner contends that the Court has jurisdiction in this case under section 7436(a)(1) and (2), while respondent asserts that the Court does not have jurisdiction under either paragraph. The Court need not consider the parties' contentions relative to section 7436(a)(1) in light of our holding below relative to our jurisdiction under paragraph (2).

Four requirements must be satisfied before the Court has jurisdiction under section 7436(a)(2). There must be: (1) an examination in connection with the audit "of any person"; (2) a determination by the Secretary that "such person is not entitled to the treatment under subsection (a) of section 530 of the Revenue Act of 1978 with respect to such an individual"; (3) an "actual controversy" involving the determination as part of an examination; and (4) the filing of an appropriate pleading in the Tax Court. Sec. 7436(a). Requirements (1) and (4) are clearly satisfied, and respondent does not object. The remaining issues are whether there was an actual controversy and a determination that petitioner is not entitled to treatment under RA '78 sec. 530.

1. *The "actual controversy" Requirement Under Section 7436(a)(2)*

Section 7436(a)(2) requires that the Secretary's determination be related to an "actual controversy". The record clearly indicates an actual controversy. The parties disputed petitioner's entitlement to RA '78 sec. 530 treatment during the

1992–96 audit and the 2003–04 audit. The Commissioner issued a TAM in connection with the 2003–04 examination on December 18, 2009. On February 3, 2010, respondent sent petitioner a 30-day letter proposing changes to its employment tax liabilities for the 2003 and 2004 taxable periods. After petitioner submitted a formal protest in which it continued to claim relief under RA '78 sec. 530, the Appeals Office considered the 2003–04 audit, including the issue of RA '78 sec. 530 relief, and described its findings in an Appeals Case Memorandum. All three of these documents show an actual controversy regarding petitioner's qualification for RA '78 sec. 530 relief. Specifically, the 30-day letter states that "[t]here is a question whether the taxpayer is entitled to relief under section 530 of the Revenue Act of 1978 from any U.S. employment tax liability with respect to the remuneration paid to the NRA flight attendants." The 30-day letter further summarizes petitioner's positions, quotes petitioner's assertions at length, and then rejects them. The TAM and the Appeals Case Memorandum similarly acknowledge that there is a disagreement between the parties.

Respondent argues that for this Court to have jurisdiction section 7436(a)(2) requires an actual controversy regarding employment status as well as RA '78 sec. 530 relief. However, the plain language of the statute indicates that there need only be an actual controversy regarding RA '78 sec. 530 relief. *See Charlotte's Office Boutique, Inc. v. Commissioner*, 425 F.3d 1203, 1211 (9th Cir. 2005) (finding an actual controversy even after the Commissioner conceded that the taxpayer had treated its president and director as an employee for the relevant taxable periods), *aff'g as supplemented* 121 T.C. 89 (2003). Respondent has provided no convincing authority that there must be an actual controversy about the employment status of a taxpayer's workers. Accordingly, the Court finds that the "actual controversy" requirement has been satisfied.

2. *The Determination Under Section 7436(a)(2) That Petitioner Was Not Entitled to RA '78 Sec. 530 Relief*

Next the Court considers whether respondent made a "determination" under section 7436(a)(2). The absence of a notice of determination of worker classification or any other

document bearing a particular title does not bar our jurisdiction.[8] *SECC Corp. v. Commissioner*, 142 T.C. 225, 231 (2014); *see Gray v. Commissioner*, 138 T.C. 295, 303–304 (2012) (holding that the Court has jurisdiction pursuant to section 6404(h) when the Secretary's determination regarding interest abatement is memorialized in a notice of determination concerning collection action(s) under section 6320 and/or 6330), *supplemented by* 140 T.C. 163 (2013); *Wilson v. Commissioner*, 131 T.C. 47, 52–53 (2008) (holding that the Court lacked jurisdiction upon the Commissioner's issuance of a notice of determination concerning collection action(s) under section 6320 and/or 6330 after the taxpayer's equivalent hearing). The existence of a determination with respect to RA '78 sec. 530 relief is sufficient to support the Court's jurisdiction. *See SECC Corp. v. Commissioner*, 142 T.C. at 231. A determination may manifest itself in nontraditional ways and need not be memorialized in a particular format. *See* H.R. Rept. No. 105–148, at 639 (1997), 1997–4 C.B. (Vol. 1) 319, 961 (stating in the explanation of provision of section 7436 that "one way the IRS could make the required determination is through a mechanism similar to the employment tax early referral procedures"). For example, according to legislative history, a "failure to agree" may constitute a determination under section 7436(a). S. Rept. No. 105–33, at 304 (1997), 1997–4 C.B. (Vol. 2) 1081, 1384; *see SECC Corp. v. Commissioner*, 142 T.C. at 232; *see also Caltex Oil Venture v. Commissioner*, 138 T.C. 18, 34 (2012) ("It is well settled that where a statute is ambiguous, we may look to legislative history to ascertain its meaning." (citing *Burlington N. R.R. v. Okla. Tax Comm'n*, 481 U.S. 454, 461 (1987))). In this case, respondent's assessment of employment taxes was obviously a memorialization of his determination.

As described above, petitioner's returns were first audited on employment taxes for the 1992–96 taxable periods. Respondent's administrative file for those periods contains an Appeals Case Memorandum that addresses substantially the same issues regarding employment tax liability as the 2003–

---

[8] It is the determination, not the piece of paper, that provides a basis for our jurisdiction. *See SECC Corp. v. Commissioner*, 142 T.C. 225, 231, (2014).

04 audit. The 1992–96 Appeals Case Memorandum states in relevant part:

> Taxpayer should be entitled to future relief from similar employment [tax liabilities] in subsequent years. Pursuant to Section 530 of the Revenue Act of 1978 as amplified by Revenue Procedure 85–18, employment related taxes may not be assessed against a person who is treating those performing services not as an employee if that individual has a reasonable basis for not treating as such. Reasonable basis includes a past IRS audit of the taxpayer, if the audit entailed no assessment attributable to the taxpayer's employment tax treatment of the individuals holding positions substantially similar to the position held by the individual whose status is at issue.

> Since Appeals has determined that these particular employees should not be treated as employees for FICA, FIT and FUTA, such determination is tantamount to a past IRS audit.

Despite this concession pertaining to the 1992–96 taxable periods, respondent iterated his position that petitioner was not entitled to RA '78 sec. 530 relief for the 2003 and 2004 taxable periods at least three different times throughout the audit process.[9]

The TAM, the 30-day letter, and the Appeals Case Memorandum for the 2003 and 2004 taxable periods all contain a substantially similar analysis and nearly identical wording discussing petitioner's RA '78 sec. 530 relief claim. The three documents each acknowledge that petitioner claimed entitlement to such relief, describe legislative history and caselaw about RA '78 sec. 530, and conclude that RA '78 sec. 530 "is not properly at issue in this case." The Appeals Case Memorandum for 2003–04 also acknowledges that in the 1992–96 audit Appeals concluded that petitioner was entitled to RA '78 sec. 530 relief but nevertheless concluded, without explaining the distinction from the 1992–96 audit, that RA '78 sec. 530 relief was inapplicable here.

The 30-day letter specifically states that "[t]here is a question whether the taxpayer is entitled to relief under section 530 of the Revenue Act of 1978 from any U.S. employment tax liability with respect to the remuneration paid to the

---

[9] The record does not reveal what, if anything, changed between the two audits such that petitioner was determined to be no longer entitled to RA '78 sec. 530 relief. *See, e.g.*, RA '78 sec. 530(a)(3) (denying relief if an employer treated any individual holding a substantially similar position to the position held by the individual whose status is at issue as an employee for any period beginning after December 31, 1977).

NRA flight attendants." It also summarizes petitioner's arguments that RA '78 sec. 530 should apply, including a quotation spanning two pages from a letter that petitioner sent to respondent on May 12, 2009. The 30-day letter also contains the words "CONCLUSION: Section 530 is irrelevant because this case does not involve the issue of worker classification" in bold print.

These three documents show a clear "failure to agree" on the issue of RA '78 sec. 530 relief. *See SECC Corp. v. Commissioner*, 142 T.C. at 233 (looking at a 30-day letter, an Appeals Case Memorandum, and a letter regarding assessment to decide whether the Commissioner had made a determination under section 7436(a)). They all recognize petitioner's position regarding RA '78 sec. 530 and reject that position. The 30-day letter and the Appeals Case Memorandum also state the amounts of the proposed adjustments. [10]

Respondent assessed the employment taxes on April 25, 2011, in the amounts of $549,810.73 for Form 940 liabilities and $3,302,226.76 for Form 941 liabilities, finding that RA '78 sec. 530 relief is inapplicable for the 2003–04 taxable periods. The Court finds that respondent's decision to assess employment tax was preceded by a determination rejecting petitioner's RA '78 sec. 530 claim as explained in the TAM, the 30-day letter, and the Appeals Case Memorandum.

3. *A Determination of Worker Classification as a Jurisdictional Prerequisite Under Section 7436(a)(2)*

Respondent contends that this Court lacks jurisdiction under section 7436(a)(2) unless respondent makes a determination of worker classification. Respondent contends that because petitioner has always treated its foreign flight

---

[10] Respondent argues that the "failure to agree" standard is unworkable because respondent could make a determination without petitioner's ever knowing about it or without knowing precisely when it was made. The Court addressed these arguments in *SECC Corp. v. Commissioner*, 142 T.C. at 239, with regard to when the period allowed by statute to file a petition in the Tax Court begins to run. In that case, relying on the text of sec. 7436(b)(2), the Court held that a 90-day (or any other) time limit does not apply where the Commissioner does not send a notice by certified or registered mail. *Id.* at 243. Therefore, a taxpayer is not harmed when the Commissioner makes a determination but does not send formal notice.

attendants as employees,[11] respondent had no need to make a determination of worker classification, and therefore the Court does not have jurisdiction under section 7436(a)(2). Whether petitioner has ever treated its foreign flight attendants as employees is a disputed material fact not appropriately decided on summary judgment. However, it is unnecessary at this stage to analyze how petitioner treated its foreign flight attendants because section 7436(a)(2) does not require that respondent make a determination of worker classification.

Respondent asserts that RA '78 sec. 530 relief is unavailable when there has been no determination of worker classification. This proposition seems doubtful. *See* RA '78 sec. 530(e)(3) ("Nothing in this section shall be construed to provide that subsection (a) only applies where the individual involved is otherwise an employee of the taxpayer."); S. Rept. No. 104–281, at 26 (1996), 1996 U.S.C.C.A.N. 1474, 1500 (explaining that an amendment to RA '78 sec. 530 in the Small Business Job Protection Act of 1996, Pub. L. No. 104–188, sec. 1122, 110 Stat. at 1766, adding subsection (e) "is intended to reverse the IRS position * * * that there first must be a determination that the worker is an employee under the common law standards before application of section 530"). The Court need not decide this question today, however, because it goes to the merits of an RA '78 sec. 530 claim—that is, whether a taxpayer is entitled to relief under that section. But that is not the question before the Court. Rather, the question before the Court is jurisdictional, and the Court need not consider the requirements of RA '78 sec. 530 here. Instead, the Court looks to the statute that provides our jurisdiction in the instant case, section 7436(a).

Section 7436 is titled "Proceedings for Determination of Employment Status", and subsection (a) is titled "Creation of Remedy." Respondent suggests that these titles show that the Court's jurisdiction is limited to instances where a determination of worker classification was made. It is a well-accepted tenet of statutory construction that "the title of a statute and the heading of a section cannot limit the plain meaning of the text." *Bhd. of R.R. Trainmen v. Balt. & O.R.*

---

[11] Petitioner disputes this fact and contends that it has never treated the foreign flight attendants as employees.

*Co.*, 331 U.S. 519, 528–529 (1947); *see Strathearn S.S. Co. v. Dillon*, 252 U.S. 348, 354 (1920); *Cornell v. Coyne*, 192 U.S. 418, 430 (1904); *United States v. Fisher*, 6 U.S. (2 Cranch) 358, 386 (1805); *Stanley Works & Subs. v. Commissioner*, 87 T.C. 389, 419 (1986). Titles are not meant to override or substitute for the provisions of the text; neither are they meant as reference guides or synopses. *Bhd. of R.R. Trainmen*, 331 U.S. at 528–529. They are available as a tool when helpful to resolve an ambiguous provision but may fail even as that because "matters in the text which deviate from those falling within the general pattern are frequently unreflected in the headings and titles." *Id.* Therefore, the title of section 7436 need not be read to limit the section to instances when the Secretary has made a determination of worker classification.

We next turn to the text of section 7436(a). As discussed above, section 7436(a) grants the Court jurisdiction when, among other requirements, there is an actual controversy involving a determination by the Secretary that

> (1) one or more individuals performing services for such person are employees of such person for purposes of subtitle C, *or*
>
> (2) such person is not entitled to the treatment under subsection (a) of section 530 of the Revenue Act of 1978 with respect to such an individual * * *.
>
> [Emphasis added.]

Here the word "or" is vital. "The plain meaning of legislation * * * [is] conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)); *see Pollock v. Commissioner*, 132 T.C. 21, 30 (2009) ("We look past plain meaning to determine congressional intent only if the language is ambiguous, applying the plain meaning would lead to an absurd result, or (maybe) where there is clear evidence of contrary legislative intent."). By inserting the word "or" between paragraphs (1) and (2) of section 7436(a), Congress unambiguously indicated that the two provisions must be read in the disjunctive. Congress divorced a determination of worker classification from a determination of denial of RA '78 sec. 530 relief with the

word "or", and the Court has no reason to look past this plain meaning.

This reading does not lead to an absurd result or obstruct legislative intent. This reading of section 7436 comports with other accepted rules of statutory interpretation. The Court must "'give effect, if possible, to every clause and word of a statute'" and, whenever possible, read a statute so that no portion of it is rendered superfluous. *United States v. Menasche*, 348 U.S. 528, 538–539 (1955) (quoting *Inhabitants of Montclair Tp. v. Ramsdell*, 107 U.S. 147, 152 (1883)); *see Guardian Indus. Corp. v. Commissioner*, 143 T.C. 1, 14–15 (2014); *Caltex Oil Venture v. Commissioner*, 138 T.C. at 30. If section 7436(a)(2) were read as requiring a determination of worker classification, the entire paragraph would be rendered superfluous. Paragraph (1) already addresses our jurisdiction when the Secretary has made a determination of worker classification. If this requirement were also embedded in paragraph (2), Congress would have no need to specify that the Court has jurisdiction when the Secretary has made a determination of worker classification *and* when there has been a denial of relief under RA '78 sec. 530. This scenario would be encapsulated in paragraph (1), and paragraph (2) would essentially be nothing but an example of an issue that might accompany a determination of worker classification.

Finally, section 7436(a)(2) does not limit the Court's jurisdiction to instances where the Secretary has made a determination of worker classification. As stated above, section 7436(a)(2) grants us jurisdiction when there is a determination that "such person is not entitled to the treatment under subsection (a) of section 530 of the Revenue Act of 1978 with respect to such an individual". Nothing in the language of the statute requires a determination of worker classification before the Court has jurisdiction over the Secretary's determination under RA '78 sec. 530. Although neither party asserts that the phrase "with respect to such an individual" in section 7436(a)(2) imposes this additional jurisdictional prerequisite, the Court addresses this phrase for the sake of completeness. *See Neely v. Commissioner*, 115 T.C. 287, 290 (2000) (stating that the Court may question its own jurisdiction sua sponte). The Court finds that the phrase "with respect to such an individual" does not require that the Secretary first determine the individual to be an employee

before jurisdiction arises. The adjective "such" relates back to the individuals described in section 7436(a)(1). The term "individuals" in section 7436(a)(1) is modified by the present participle phrase "performing services for such person" and is not defined in the first instance by reference to "employees". Therefore, the individuals that section 7436(a)(2) refers to are workers who are performing services, and they need not be classified as employees before section 7436(a)(2) jurisdiction arises.

Accordingly, the Court holds that it may have jurisdiction under section 7436(a)(2) whether or not the Secretary has made a determination of worker classification. Respondent has made a determination to deny petitioner relief under RA '78 sec. 530, thereby fulfilling the final jurisdictional predicate of section 7436(a)(2).

C. *Conclusion*

All the jurisdictional predicates of section 7436(a)(2) have been satisfied, and the Court holds that it has jurisdiction over both the RA '78 sec. 530 determination and the notice of deficiency asserting liability under section 1441. Petitioner's motion for partial summary judgment will be granted in part, [12] and respondent's motion for partial summary judgment will be denied.

To reflect the foregoing,

*An appropriate order will be issued.*

---

[12] The Court will grant petitioner's motion for partial summary judgment insomuch as it relates to our jurisdiction pursuant to sec. 7436(a)(2). We do not address petitioner's argument in its motion for partial summary judgment regarding our jurisdiction pursuant to sec. 7436(a)(1).