T.C. Memo. 2020-114

UNITED STATES TAX COURT

REFLECTXION RESOURCES, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12017-16.                       Filed August 3, 2020.

P, a medical staffing agency, hired therapists to work for client medical facilities. P entered into a professional services agreement with G for 11 calendar quarters, during which G paid the therapists and filed employment tax returns reporting itself, not P, as their employer, pursuant to I.R.C. sec. 3401(d). For the next 5 calendar quarters, P paid the therapists itself and filed the employment tax returns. In all 16 quarters the therapists were paid reimbursements for travel expenses that were not reported as wages subject to employment taxes.

R examined P's employment tax liabilities for all 16 quarters and determined that the travel expense reimbursements were subject to employment taxes. For all 16 quarters P contended that the travel expense reimbursements are not taxable. For the 11 calendar quarters reported by G, P contended that the therapists were employees not of P but of G and that, if they were G's employees, G was entitled to "section 530 relief" from employment taxes under the Revenue Act of 1978, Pub. L. No. 95-600, sec. 530, 92 Stat. at 2885. R issued a

**[\*2]** "Notice of Determination of Worker Classification" in which he determined--ostensibly for all 16 quarters--that the workers are properly classified as P's employees and that P is not entitled to section 530 relief.

      <u>Held</u>:  We have jurisdiction under I.R.C. sec. 7436(a)(2) as to the 11 calendar quarters reported by G, because after an audit R issued a determination concerning section 530 relief, as to which there was an "actual controversy".

      <u>Held</u>, <u>further</u>, we do not have jurisdiction as to the 5 calendar quarters reported by P, because, despite R's purported "determinations" concerning the workers' status as employees and concerning section 530 relief, P had reported the workers as employees and had never claimed section 530 relief for those reported quarters, and there was no "actual controversy" on those issues, as required by I.R.C. sec. 7436(a).

<u>Saul Mezei</u>, <u>Mary H. Hevener</u>, <u>Steven P. Johnson</u>, and <u>John F. Craig III</u>,

for petitioner.

<u>Linda P. Azmon</u>, for respondent.

MEMORANDUM OPINION

GUSTAFSON, <u>Judge</u>:  The petition in this case, brought by Reflectxion

Resources, Inc., pursuant to section 7436,[1] seeks--

---

[1]Unless otherwise indicated, all section references are to the Internal

                                                       (continued...)

**[*3]**   a redetermination of the determinations and deficiencies in Federal income tax withholding and Federal Insurance Contributions Act ("FICA") taxes for the sixteen calendar quarters in the years 2008 through 2011, set forth by the Commissioner of Internal Revenue ("Respondent") in a Notice of Determination of Worker Classification ("NDWC") dated February 26, 2016.

The principal merits issue that must eventually be decided in this case is whether certain travel reimbursement expenses are subject to employment taxes as wages. In this opinion we do not address that issue.

Rather, the case is now before us on "Petitioner's Motion to Determine Jurisdiction", and we address the jurisdictional questions that petitioner has raised. The parties agree that we have jurisdiction over the first 11 of the 16 quarters at issue, and we so hold. Respondent contends that we also have jurisdiction over the remaining 5 quarters, but we hold that we do not.

---

[1](...continued)
Revenue Code of 1986 as in effect at all relevant times (codified in 26 U.S.C.). However, references to "section 530" are to the Revenue Act of 1978, Pub. L. No. 95-600, sec. 530, 92 Stat. at 2885.

**[*4]**                              Background[2]

Petitioner's business

Petitioner was organized in 2001 as a corporation under the laws of the State of Delaware. Its principal place of business when it filed its petition was in Florida.[3] The tax periods at issue are the 16 calendar quarters in the years 2008 through 2011. Throughout those periods, petitioner operated as a medical staffing agency. It employed various therapists to fulfill contracts with clients throughout the United States (hospitals, schools, physical therapy clinics, and other healthcare facilities) who sought therapists for temporary staffing and for direct hire purposes.

---

[2]The facts underlying the jurisdictional issues are not in dispute. We therefore need not address any issues as to burden of proof or burden of production, nor any questions about the scope and standard of our review. In this statement of the background of the case, we largely follow respondent's recounting of the facts. Respondent's version is in turn based largely on the petition.

[3]Under the general rule of section 7482(b)(1), our decision in this case may, absent stipulation of the parties under section 7482(b)(2), be "reviewed by the United States court of appeals for the circuit in which is located * * * (B) in the case of a corporation seeking redetermination of tax liability, the principal place of business or principal office or agency of the corporation". Because petitioner seeks a redetermination of its liabilities and its principal place of business is Florida, appeal in this case would be to the U.S. Court of Appeals for the Eleventh Circuit.

[*5] Reimbursement of therapists' travel expenses

During the periods at issue, petitioner hired therapists who were local to petitioner's clients. Petitioner also hired "travel therapists" who, in order to accept employment assignments for clients to whom they were not local, had to travel from their locations to the clients' geographical areas to perform services for the clients.

During the periods at issue, petitioner reimbursed the travel expenses of travel therapists--i.e., per diem payments for meals and lodging and other travel expenses.[4] Petitioner treated reimbursement payments for some travel therapists (not at issue here) as wages subject to employment taxes--i.e., Federal Insurance Compensation Act ("FICA") tax and income tax withholding ("ITW"). However, for other travel therapists, petitioner reimbursed travel expenses but did not treat those payments as wages subject to FICA or ITW. The travel expenses that petitioner did not treat as subject to employment taxes are the subject of the merits issue in this case. (We do not resolve that dispute in this opinion.)

---

[4]For some travel therapists, petitioner provided housing rather than reimbursing them for housing expenses. Both parties appear to assume that, for employment tax purposes, provision of housing is equivalent to reimbursement for housing expenses; and for purposes of this opinion, we assume the same. For simplicity's sake we refer only to reimbursement in the following discussion.

[*6] Gevity's reporting in the first 11 quarters

For the 11 quarters ending March 31, 2008, through September 30, 2010 ("the Gevity-reported quarters"), petitioner was party to a professional services agreement ("PSA") with Gevity HR, Inc. ("Gevity"). Under the PSA, Gevity (rather than petitioner) reported the wages and withholding of petitioners' employees on Forms 941, "Employer's Quarterly Federal Tax Return", and Forms W-2, "Wage and Tax Statement". Gevity did this reporting under its own employer identification number ("EIN"). On those forms the payments for travel reimbursement were not reported as wages subject to employment taxes. Petitioner did not deposit any FICA taxes or ITW with the Internal Revenue Service ("IRS") under its own EIN for the Gevity-reported quarters.

The PSA was terminated at the end of September 2010.

Petitioner's reporting in the subsequent 5 quarters

Thereafter, for the 5 calendar quarters ending December 31, 2010, through December 31, 2011 ("the self-reported quarters")--i.e., the quarters after the Gevity-reported quarters--petitioner under its own EIN timely filed Forms 941 and issued Forms W-2 to the travel therapists. On those forms petitioner reported the wages it paid to the travel therapists, but petitioner (like Gevity in the previous

[*7] quarters) did not report or pay taxes on the travel reimbursement payments at issue.

Employment tax examination

The IRS examined petitioner's employment tax liabilities for the periods at issue, and its examiners determined that petitioner's travel reimbursement plan violated the accountable plan rules provided in section 62 and its accompanying regulations. Specifically, respondent found that petitioner paid per diem payments, mileage, and other travel expenses to travel therapists who petitioner failed to properly determine were performing services while traveling "away from home" within the meaning of section 162(a)(2)--an issue we do not resolve in this opinion. The IRS examiners further determined that petitioner's travel reimbursement practice constituted "wage recharacterization" in violation of section 1.62-2(d) of the Income Tax Regulations.

During the audit petitioner maintained that, for employment tax purposes, the therapists were Gevity's employees for the Gevity-reported quarters because Gevity was their section 3401(d)(1) statutory employer during that time. Petitioner also maintained that, with respect to the Gevity-reported quarters, it qualified for relief from any employment tax liabilities under section 530 of the Revenue Act of 1978, Pub. L. No. 95-600, 92 Stat. at 2885, to which we refer as

**[\*8]** "section 530". We quote and discuss section 530 in part II below. During the audit petitioner did not raise any contention (under section 530 or otherwise) in connection with the self-reported quarters.

The IRS examiners proposed the employment tax liabilities at issue.

Petitioner's appeal

Petitioner filed a protest with the IRS, and the case was forwarded for consideration by the IRS's Office of Appeals ("Appeals"). During the course of Appeals' consideration, petitioner sent to Appeals a two-page letter dated June 18, 2015, with two attachments--(1) an eight-page "List of Authorities for Review in Connection with Reflectxion's Protest" and (2) a red-lined copy of "Treas. Reg. § 1.62-2", showing revisions made to the proposed regulation to yield the final regulation.

In its June 2015 submission, petitioner referred to section 530. For reasons we explain below, petitioner's references in this submission to section 530 are significant to the jurisdiction issue we resolve here, so we quote the relevant portions of that submission at length.

Petitioner's letter explained that it was "submitting additional authorities for your review", and it included four "bullet points". The fourth stated:

**[*9]** The contract between Reflectxion and Gevity, in place <u>through the third quarter of 2010</u>, ensured under Florida law that Gevity was the section 3401(d)(1) employer, and thus that Reflectxion was not required to file any payroll tax returns treating its employees as subject to wage withholding. For this reason, Reflectxion should be subject to <u>Section 530 relief from withholding for these periods</u>. [Emphasis added.]

Thus, petitioner's letter invoked section 530 for the Gevity-reported quarters but not for the self-reported quarters.

Petitioner's eight-page "List of Authorities" consisted of seven numbered sections, the seventh of which (at pp. 6-8) stated in full as follows (emphasis added):

7. <u>Disputes over the Application of Section 530 of the Revenue Act of 1978 Can Be Resolved in Tax Court</u>.

The final important authorities that should be examined in consideration of this Appeal are the several recent cases determining both that (a) the Tax Court has jurisdiction, provided by Code section 7436, over any cases in which there is <u>a "dispute" about the application of Section 530</u> of the Revenue Act of 1978, Pub. L. No. 95-600, sec. 530, 92 Stat. at 2885 (the text of which we faxed to you in advance of our Appeals Conference on June 8, and is quoted again below); and (b) that <u>Section 530 is not limited</u> solely to cases involving the classification of workers as employees versus independent contractors, but instead, by its terms prohibits the IRS from assessing payroll taxes on any employees <u>in instances where the employees' common law employer has reasonably believed that the employees' wages are exempt from payroll taxes</u>. Section 530 of the Revenue Act of 1978 provides in relevant part:

"(a) Termination of Certain Employment Tax Liability. -

- 10 -

**[*10]**	(1) In general. - If -

(A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period, and

(B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee, then, for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee."

During the period that Reflectxion had contracted with Gevity to act as the "co-employer" under Florida law (and, effectively as the "statutory employer" under Code section 3401(d)(1)), Reflectxion knew that all the payments to its employees (including the per diem payments) were being made by Gevity, and it knew that all the employment tax and information returns, which were filed by Gevity and accepted by the IRS, were filed consistently under the legal assumption that Gevity (not Reflectxion) was the employer of the workers. This position, supported by the Florida co-employment law and by Code section 3401(d)(1)(as applied and interpreted by Florida courts) unquestionably had a "reasonable basis." Accordingly, Reflectxion should be protected by Section 530 for all the period for which Gevity's contract was in effect (irrespective of whether it is separately protected due to closure of the statute of limitations for the years 2007-2008).[5]

Further, should the IRS take the position that Section 530 relief does not apply, such a conclusion automatically creates jurisdiction for the Tax Court under Code section 7436. Even if the IRS were to fail to issue a 90-day letter upon the conclusion of this audit, the taxpayer would still be entitled to resolve this dispute in Tax Court, because "It

**[*11]** is the determination [that Section 530 does not apply], not the piece of paper, that provides a basis for our jurisdiction."[6]

The Tax Court, in interpreting Section 530, has concluded that the statute does not require the existence of any dispute as to whether the workers were employees versus independent contractors.[7] Instead, it would apply the statute as written, to determine whether the employer had any reasonable basis for not filing Forms 941 reporting wages paid and withholdings collected from its employees.[5] Reflectxion's reasonable belief is based upon its contract with Gevity, and Florida law respecting such contracts, and treating companies like Gevity as the statutory employer, which is the sole entity required to withhold and pay employment file and file employment tax returns.

Should IRS Appeals not agree with the many arguments outlined here and in our Protest supporting abatement of the proposed taxes, and not accept Reflection's settlement offer with respect to the few (approximately 20) identified employees for whom factual disputes exist about their travel status, [it] is Reflectxion's intent to file a Petition in Tax Court, even if the IRS fails to send Reflectxion a Letter 3523, Notice of Determination of Worker Classification (NDWC), with respect to the tax periods in issue,[6] or to send a

---

[5]See infra part III.B.3.c. Respondent contends in his response brief that, in the sentence quoted in text above (beginning "Instead"), petitioner "asserts * * * that section 530 is not limited solely to cases involving the classification of employees versus independent contractors, but also instances where the employees' common law employer has reasonably believed that the employees' wages are exempt from payroll taxes". We see in this excerpt no suggestion by petitioner that its section 530 argument applies to the self-reported quarters. The "also instances" that petitioner posits pertain to the Gevity quarters, for which it refers to itself as the "common law employer" because (it contends) Gevity is treated as "employer" under section 3401(d)(1).

[6]See infra part III.B.3.c. Respondent contends in his response brief that "the statement that petitioner intends to file a petition with the Tax Court with 'respect

(continued...)

**[*12]** 90-day letter (but instead sends Reflectxion an assessment).  In its petition, Reflectxion would follow the path established in SECC v. Commissioner, explaining that a dispute exists as to the application of Section 530 (which procedurally establishes jurisdictional grounds to file in Tax Court, with appeal available to the Eleventh Circuit[8]), and further explaining its reasonable belief both that section 530 applies to the period covered by the Gevity contract, and, for all the years, its reasonable expectation that travel expenses would be incurred, and its reasonable belief that these payments met the requirements of both the Code section 62(c) regulations and Treas. Reg. § 1.132-5(a)(1)(v) and (vi), and were excludable from wages under Code section 132.[7]

We hope that in consideration of these hazards of litigation, you will work with us to reach a settlement in this Appeal.

_____

[5] The contract with Gevity was in effect through the third quarter of 2009 [sic].  There was no statute of limitations extension filed by Reflectxion for 2007 or 2008.  As was explained in Reflectxion's

_____

[6](...continued)
to the tax periods at [sic] issue'", combined with other statements we have addressed in footnotes here, "in and of itself creates an actual controversy under section 7436(a)(2) with respect to the non-Gevity periods."  As we read the "List of Authorities", it is not so.  Petitioner indeed indicated it would file a petition as to all periods, but the contentions it stated for the self-reported ("non-Gevity") periods did not invoke section 530.

[7]See infra part III.B.3.c.  Respondent contends in his response brief that, in the second half of the sentence quoted above, petitioner asserts that "section 530 applies to the period covered by the Gevity contract, and for all the years, its reasonable expectation that the travel expenses would be incurred, and its reasonable belief that these payments * * * were excludable from wages under Code section 132."  We see in this excerpt no suggestion by petitioner that its section 530 argument applies to the self-reported quarters.  On the contrary, it explicitly states that "section 530 applies to the period covered by the Gevity contract".  (Emphasis added.)

**[\*13]** Protest, its subsequent submissions on January 6, 2014 and May 20, 2015, and during our conference on June 3, Reflectxion maintains that the statute of limitations expired for 2007-2008, because the returns filed by Gevity were filed on Reflectxion's behalf, there was no Schedule F filing requirement for those years, and the IRS did not request a statute extension from either Gevity (the section 3401(d(l) employer, under Eleventh Circuit law) or Reflectxion.

[6] See footnote 8 in American Airlines v. Commissioner, 144 T.C. No. 2, Jan 13, 2015), citing SECC Corp. v. Commissioner, 142 T.C. No 12 (slip. op, at 11) (Apr. 3, 2014).

[7] See Charlotte's Office Boutique v. Commissioner, 425 F.3d 1203, 1211 (9th Cir. 2005) (concluding that Section 530 applied, even though the worker in question, whose wages had been exempted from withholding and reporting, had been treated as an employee for the relevant taxable periods). See also Marlar v. Commissioner, 151 F.3d 962 (9th Cir. 1998) (in which, the court concluded that a company that had never filed any information returns whatsoever with respect to certain persons who had been treated as "lessees" instead of employees was nevertheless entitled to Section 530 protection). Marlar was cited in the pleadings submitted in American Airlines, supra, in which the Tax Court concluded that "Respondent has provided no convincing authority that there must be an actual controversy about the employment status of a taxpayer's workers."

[8] Applying the so-called "Golsen Doctrine," the Tax Court follows precedent in the circuit to which any case under consideration by the Tax Court would be appealed. See Lardas v. Commissioner, 99 T.C. 490, 495 (1992), explaining Golsen v. Commissioner, 54 T.C. 742 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971). Thus the above-cited Eleventh Circuit cases (Trucks, Inc., on the wage recharacterization issue) and Thostesen v. U.S., 331 F. 3d 1295 (11th Cir 2003) on the section 3401(d)(1) issues) would be followed and applied by the Tax Court.

**[*14]** Thus, petitioner's list of authorities cited section 530 in connection with the Gevity-reported quarters but not the self-reported quarters.

The above-quoted portions of petitioner's June 2015 submission are the only contentions regarding section 530 that petitioner made before Appeals. Petitioner did not invoke section 530 in connection with the self-reported quarters.

NDWC

On February 26, 2016, respondent issued to petitioner a "Notice of Determination of Worker Classification" ("NDWC"), the first page of which stated as follows:

Dear Taxpayer:

This letter is your Notice of Determination of Worker Classification ("Notice"), as required by law, to notify you (before assessment) that we have determined that you owe additional employment tax, additions to tax, and/or penalties for the tax periods identified below.

We have made three determinations:

- We have determined that for purposes of federal employment taxes, the individual(s) described or listed in Table 1 below are to be legally classified as employees for the tax periods indicated;

- We have determined that with respect to such individual(s) you are not entitled to relief from employment tax under the treatment described in section 530(a) of the Revenue Act of 1978; and

[*15] • We have determined that for the tax periods indicated, you owe additional employment tax, additions to tax, and/or penalties in the amounts set forth in Table 2 following the list of reclassified individuals. Please be aware that the figures on Table 2 do not include the interest that is required by law to be imposed on underpayment of tax. [Emphasis added.]

The "Table 1 below" that is referred to in the NDWC lists employees in all 16 quarters at issue (i.e., both the Gevity-reported quarters and the self-reported quarters). Thus, by its general terms, the NDWC seems to have purported to determine employee status and entitlement to section 530 treatment for both the 11 Gevity-reported quarters and the 5 self-reported quarters.

The reference to section 530 in the second bullet point above is the only such reference in the NDWC. The NWDC concluded with an "Explanation of Adjustments", which stated:

You provide physical therapists, physical therapist assistants, certified occupational therapy assistants, occupational therapists, and speech language pathologists ("health care employees") to facilities requiring health care workers for temporary assignments. During 2008, 2009, 2010, and 2011, you made payments to or for the benefit of some of your health care employees for lodging, per diem, mileage, and other travel expenses, which payments you did not include as wages for purposes of employment tax under Internal Revenue Code §§ 3101, 3111, and 3402.

Under Treas. Reg. §31.3401(a)-4(b), if a reimbursement or other expense allowance arrangement does not satisfy the requirements of section 62(c) and §1.62-2, all amounts paid under the arrangement are

[*16] treated as paid under a non-accountable plan, are included in wages, and are subject to withholding and payment of employment taxes when paid. Your plan serves to re-characterize amounts paid as taxable wages as a non-taxable reimbursement allowance to employees when they are traveling away from home. Thus, your plan does not meet the business connection requirement of §1.62-2(d)(3) because health care employees are receiving the same amount of wages, regardless of whether they incur any travel expenses. Accordingly, the payments you made during 2008 through 2011 are wages subject to employment taxes under sections 3101, 3111, and 3401.

In addition, you have not established that your health care employees have incurred traveling expenses "while away from home" within the meaning of section 162(a)(2). Because the workers have no tax home within the meaning of section 162, payments to them do not meet the business connection requirement of § 1.62-2(d)(2) and such reimbursements of those expenses are wages for purposes of employment tax.

This "Explanation" in the NDWC did not refer to section 530.

Petition

On May 18, 2016, petitioner timely filed its petition with the Tax Court.

The petition includes the following allegations that refer to section 530 (emphasis added):

4.b.    Respondent incorrectly determined that Petitioner is not entitled to relief under Section 530(a) with respect to Petitioner's therapists <u>for the Gevity Quarters</u>.

*    *    *    *    *    *    *

**[*17]** 5.b.   Petitioner qualifies for Section 530 relief <u>for the Gevity Quarters</u>.

       *     *     *     *     *     *     *

WHEREFORE, Petitioner prays that this Court hear this proceeding and determine:

       *     *     *     *     *     *     *

3.       That Petitioner is entitled to Section 530 relief <u>during the Gevity Quarters</u> * * *.  [Emphasis added.]

That is, the petition seeks section 530 relief for the Gevity-reported quarters but not for the self-reported quarters.

<u>Motion to determine jurisdiction</u>

Petitioner filed a "Motion to Determine Jurisdiction", which asks the Court to determine the extent to which it has jurisdiction in this case.  Petitioner states: "[I]t appears that the Court possesses jurisdiction over the first eleven quarters in issue (the 'Gevity Quarters') but might not possess jurisdiction over the last five quarters in issue" (i.e., the self-reported quarters).  Respondent filed a response to the motion, in which he contends that the Court has jurisdiction over all 16 quarters.

**[*18]**                              Discussion

I.      Section 7436

A.      Overview

Section 7436 was enacted as part of the Taxpayer Relief Act of 1997, Pub.

L. No. 105-34, sec. 1454(a), 111 Stat. at 1055, and it grants the Tax Court

jurisdiction over cases involving employment taxes imposed under subtitle C.  We

explained in Am. Airlines, Inc. v. Commissioner, 144 T.C. 24, 32 (2015):

> As the Court has noted previously:  "[I]n response to the
> expressed intent of Congress to provide a convenient, prepayment
> hearing, this Court and the Courts of Appeals have given the
> jurisdictional provisions a broad, practical construction rather than a
> narrow, technical meaning."  Lewy v. Commissioner, 68 T.C. 779,
> 781 (1977) (fn. refs. omitted).  Therefore, where a statute is capable
> of various interpretations, the Court is inclined to "adopt a
> construction which will permit the Court to retain jurisdiction without
> doing violence to the statutory language."  Smith v. Commissioner,
> 140 T.C. 48, 51 (2013).

However, we still properly characterized the grant under section 7436 as one of

"limited jurisdiction".  Id. at 31.

B.      The text of the statute

Section 7436(a), as amended and in effect during the periods at issue,

provides as follows:

**[\*19]**        SEC. 7436(a).  Creation of Remedy.--If, <u>in connection with an</u> <u>audit</u> of any person, there is an <u>actual controversy</u> involving a <u>determination</u> by the Secretary <u>as part of an examination</u> that--

>         (1)  one or more individuals performing services for such person are employees of such person for purposes of subtitle C, or
>
>         (2)  such person is not entitled to the treatment under subsection (a) of section 530 of the Revenue Act of 1978 with respect to such an individual,

upon the filing of an appropriate pleading, the Tax Court may determine whether such a determination by the Secretary is correct and the proper amount of employment tax under such determination. Any such redetermination by the Tax Court shall have the force and effect of a decision of the Tax Court and shall be reviewable as such. [Emphasis added.]

Pertinent to the current controversy, this statute sets up three jurisdictional requirements:

First, there must be a certain kind of "determination" by the IRS--i.e., either a determination that someone is an "employee" of the person whose return is being audited (whom we will call "the taxpayer") or a determination that the taxpayer is not entitled to section 530 treatment.  If the IRS has made one or both of such determinations, there may be jurisdiction.  If it has not, then there can be no jurisdiction in the Tax Court.  (One such determination can suffice to confer jurisdiction.  There need not be a determination as to <u>both</u> employee status <u>and</u>

**[*20]** entitlement to section 530 treatment. See <u>Am. Airlines, Inc. v. Commissioner</u>, 144 T.C. at 33.)

Second, that determination must have been made "in connection with an audit" of the taxpayer's returns and "as part of an examination". If the determination was so made, then there may be jurisdiction. If instead the IRS had made its determination in some other context (such as in ongoing litigation), then there can be no jurisdiction in the Tax Court.

Third, there must be an "actual controversy" regarding that audit determination. In the absence of an "actual controversy", there can be no jurisdiction in the Tax Court.

C.     <u>"Actual controversy"</u>

The main jurisdictional issue in this case turns on the "actual controversy" requirement. The phrase "actual controversy" is a term of art in the declaratory judgment context, <u>Malowney v. Fed. Collection Deposit Grp.</u>, 193 F.3d 1342, 1347 (11th Cir. 1999) ("a declaratory judgment may be issued only in the case of an 'actual controversy'"); and its use in section 7436 corresponds to the fact that section 7436 resembles a declaratory judgment provision. See <u>SECC Corp. v. Commissioner</u>, 142 T.C. 225, 237 (2014); <u>Henry Randolph Consulting v. Commissioner</u>, 112 T.C. 1, 11-12 (1999). As the Supreme Court explained:

**[*21]** A "controversy" in this sense must be one that is appropriate for judicial determination. * * * A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. * * * The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. * * * It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. * * *

Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240-241 (1937); cf. id. at 240 ("The word 'actual' is one of emphasis rather than of definition").

If during an audit the IRS purports to make a determination that a given individual is the employee of the taxpayer, but the taxpayer had admitted that the individual was an employee and had treated him as an employee, then there is no "actual controversy" about employee status and no jurisdiction in the Tax Court. Or if the IRS makes a purported determination that the taxpayer is not entitled to section 530 treatment, but the taxpayer had not claimed section 530 treatment, then there is no "actual controversy" about section 530 and no jurisdiction in the Tax Court.

II.     Section 530

For a worker correctly characterized as an independent contractor, an employer does not owe employment taxes; but for a worker correctly characterized

**[*22]** as an employee, the employer may owe employment taxes. The line between an employee and an independent contractor is not always easy to draw. If an employer has incorrectly characterized an employee as an independent contractor, then correcting the error may require after-the-fact payment of the employment taxes, possibly with penalties, additions to tax, and interest.

Of course, underpayments of employment taxes can also result from errors other than mischaracterization of an employee as an independent contractor. For example, an employer might simply fail to report the wages that it paid as such to employees. Or it might fail to report payments that are wages but that the employer did not treat as wages. Or it might make computational errors in reporting wages.

For underpayments that do result from employers' mistakes in line-drawing between employees and independent contractors, Congress gave partial relief by enacting section 530. Where it applies, section 530 gives the employer relief from employment taxes even though the actual employment relation would have required the payment of those taxes. Section 530 provides in part as follows (emphasis added):

**[*23]** SEC. 530. CONTROVERSIES INVOLVING WHETHER INDIVIDUALS ARE EMPLOYEES FOR PURPOSES OF THE EMPLOYMENT TAXES.

 (a) Termination of Certain Employment Tax Liability * * *--

 (1) In general.--<u>If--</u>

   (A) <u>for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period</u> * * *, <u>and</u>

   (B) in the case of periods after December 31, 1978, <u>all Federal tax returns</u> (including information returns) required to be filed by the taxpayer with respect to such individual for such period <u>are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee,</u>

 then, for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for <u>not treating such individual as an employee.</u>

Under that statute, three requirements must be met in order for the employer to receive relief:  First, it must be true that the employer "did not treat an individual as an employee".  Second, the employer must have filed tax returns "on a basis consistent with the taxpayer's treatment of such individual as not being an employee".  Third, the employer must have had a "reasonable basis for not

**[\*24]** treating such individual as an employee". All three requirements must be met in order for the employer to qualify for relief under section 530.

All three of those requirements for relief under section 530 involve the employer's having <u>not</u> treated the worker as an employee. Thus, section 530 has no application where the employer <u>did</u> treat the worker as an employee. For employment taxes that result not from the mischaracterization of the worker but from some other error in reporting and paying employment tax, section 530 has no application.

III. <u>Analysis</u>

A. <u>Jurisdiction over the Gevity-reported quarters</u>

With respect to the 11 Gevity-reported quarters, there is at least one "actual controversy" under section 7436(a)--i.e., whether petitioner is "entitled to the treatment under subsection (a) of section 530", for purposes of section 7436(a)(2).[8] For those periods petitioner's June 2015 submission to

---

[8] A second possible "actual controversy" in connection with the Gevity-reported quarters is whether the relevant individuals were petitioner's "employees", for purposes of section 7436(a)(1). Petitioner admits that it was their common law employer but contends that Gevity was "the person having control of the payment of such wages" and was therefore the "employer", under section 3401(d)(1). Arguably, a controversy about who is the employ<u>er</u> of the individuals for employment tax purposes inherently involves an "actual controversy" about whether the individuals are one's employ<u>ees</u>, for purposes of

(continued...)

[*25] Appeals explicitly requested treatment under section 530, and respondent's NDWC expressly denied petitioner's request. Thus, in the words of section 7436(a), for those periods there was an "actual controversy"; and the IRS made a "determination"--"in connection with an audit" and "as part of an examination"--that petitioner "is not entitled to the treatment under subsection (a) of section 530".

Following that determination, petitioner filed in this Court a petition seeking, in paragraph 3 of its prayer for relief, section 530 treatment for those quarters; and respondent's answer asked the Court to deny that relief and sustain the IRS's adverse determinations. We hold, as the parties agree, that there is an "actual controversy", under section 7436(a), for the 11 Gevity-reported quarters. We have jurisdiction to resolve that dispute for the Gevity-reported quarters.

B.    Jurisdiction over the self-reported quarters

1.    Jurisdiction must be determined separately for each period.

It does not follow that we therefore automatically have jurisdiction over the five self-reported quarters. The Court cannot conclude that it has jurisdiction over all periods in a case simply because it has jurisdiction over some periods. Rather,

---

[8](...continued)
section 7436(a)(1), and arguably such a controversy could support jurisdiction in the Tax Court. However, it is not necessary that we resolve that issue in this case.

**[\*26]** the Court must determine whether it has jurisdiction with respect to each tax period before it.[9] We have concluded that there was an "actual controversy", and that we have jurisdiction, as to the 11 Gevity-reported quarters; but we must separately determine jurisdiction as to the 5 self-reported quarters.

>     2.     The IRS purportedly made audit determinations.

The NWDC states generally, without distinction as to the Gevity-reported quarters and the self-reported quarters, that--

- We have determined that for purposes of federal employment taxes, the individual(s) described or listed in Table 1 below [which listed employees in all sixteen quarters] are to be legally classified as employees for the tax periods indicated; [and]

- We have determined that with respect to such individual(s) you are not entitled to relief from employment tax under the

---

[9]See, e.g., Charlotte's Office Boutique v. Commissioner, 121 T.C. 89 (2003) (examining jurisdiction separately for various taxable periods), supplemented by T.C. Memo. 2004-43, aff'd, 425 F.3d 1203 (9th Cir. 2005); see also O'Neil v. Commissioner, 66 T.C. 105, 107 (1976) (holding that where a statutory notice determined deficiencies for four years, jurisdiction was lacking for the fourth year in the absence of a timely petition for that year); Arman v. Commissioner, T.C. Memo. 1994-526 (observing in the income tax deficiency context that the Court determines its jurisdiction on a year-by-year basis). In a case involving Social Security taxes and ITW, the relevant tax period is a calendar quarter, and the IRS's NDWC issued to petitioner asserted liabilities by the quarter. Compare sec. 7436(c)(1) (small case procedures where "the amount of employment taxes placed in dispute is $50,000 or less for each calendar quarter" (emphasis added)), with sec. 7463(a)(1) (small case procedures where the amount of income tax at issue is "$50,000 for any one taxable year" (emphasis added)).

**[\*27]** <u>treatment described in section 530(a)</u> of the Revenue Act of 1978 \* \* \*.  [Emphasis added.]

These two "determin[ations]" correspond to the two jurisdiction-conferring determinations in section 7436(a)(1) (i.e., that the workers "are employees") and section 7436(a)(2) (i.e., that the employer "is not entitled to the treatment under subsection (a) of section 503").[10]

The IRS thereby purported to determine what were in fact undisputed propositions; but for purposes of the existence of a "determination", that lack of dispute is beside the point.  "[E]ven when a taxpayer has made a showing that casts doubt on the validity of a determination \* \* \*, the notice is generally not rendered void, but remains sufficient to vest the Court with jurisdiction." <u>Charlotte's Office Boutique v. Commissioner</u>, 121 T.C. 89, 104 (2003), <u>supplemented by</u> T.C. Memo. 2004-43, <u>aff'd</u>, 425 F.3d 1203 (9th Cir. 2005).[11]

---

[10]The NWDC made a third determination--i.e., "that for the tax periods indicated, you owe additional employment tax, additions to tax, and/or penalties in the amounts set forth in Table 2"--but that third determination does not correspond to the provisions of section 7436(a)(1) and (2) that define the Tax Court's jurisdiction.  Only if the IRS has made a "determination" under section 7436(a)(1) or (2) can we then proceed to "determine \* \* \* the proper amount of employment tax <u>under such determination</u>."  Sec. 7436(a).

[11]Respondent's opening brief distorts the holding in <u>Charlotte's Office Boutique</u> by citing it to support the broad assertion that "[t]his Court has held on numerous occasions that it is the Commissioner's determination that provides the

(continued...)

[*28] Construed literally, those general determinations applied to all quarters. We therefore conclude that, in the words of section 7436(a), even for the self-reported quarters the IRS made "determination[s]", "in connection with an audit" and "as part of an examination", that the individuals "are employees" and that petitioner "is not entitled to the treatment under subsection (a) of section 530". This leaves us to decide whether these determinations addressed an "actual controversy" as to the self-reported quarters.

     3.     <u>There was no "actual controversy" as to those determinations in the self-reported quarters</u>.

     a.     <u>It takes two to have a controversy</u>.

As we have shown, <u>see</u> <u>supra</u> part III.B.2, one party (the IRS) can unilaterally make a "determination" under section 7436. However, one party

---

[11](...continued) predicate for jurisdiction under section 7436". It is true that the determination, whether or not valid, can satisfy the jurisdictional requirement of a "determination"; but as we will show, under section 7436(a) the absence of an "actual controversy"--measured by reference to what <u>petitioner</u> actually contended--will defeat jurisdiction even if there is a purported "determination" under section 7436(a)(1) or (a)(2). It is indeed fair to cite income tax deficiency cases to make the point that a notice of deficiency (analogous to a NDWC) can be valid under section 6213(a) as long as it reflects a deficiency determined under section 6212(a) (analogous to a determination under section 7436(a)), even if the deficiency determination turns out to have been invalid. However, jurisdiction in an employment tax case under section 7436 depends on an additional requirement--"actual controversy"--that is not required for a notice of deficiency under section 6212(a) in income tax deficiency cases under section 6213(a).

[*29] cannot unilaterally make an "actual controversy". A controversy requires two opponents. That is, a controversy "must * * * touch[] the legal relations of parties having adverse legal interests." Aetna Life Ins. Co., 300 U.S. at 240-241. Consequently, when we look to see whether there was an "actual controversy", we do not limit ourselves to the IRS's determination but rather examine also the taxpayer's contentions. In SECC Corp. v. Commissioner, 142 T.C. at 236, for example--

> The essential facts relating to this ["actual controversy"] point are: (1) during the tax periods at issue petitioner treated its workers dually as employees and as independent providers of rental equipment; (2) in the 30-day letter Ms. Buck, speaking for the Examination Division, rejected petitioner's approach and treated petitioner's workers as employees with respect to the equipment lease payments; (3) in the protest petitioner continued to assert the position the Examination Division had rejected in the 30-day letter and added contentions disputing that its workers were employees with respect to any of petitioner's payments to them and claiming entitlement to relief under RA '78 sec. 530 and sections 3402 and 3509(a); and (4) the case was subsequently considered by the Appeals Office and reconsidered by the Examination Division and the Appeals Office during which time petitioner continued to assert all of the positions included in the protest. [Emphasis added.]

In SECC the employer was obviously an active contender in a two-sided "actual controversy". We now consider whether the same can be said in this case.

**[\*30]**  b. <u>There was no "actual controversy" as to employee status</u>.

For all periods (including the self-reported quarters) the IRS purported to determine that "the individual(s) \* \* \* are to be legally classified as employees", and such a determination corresponds to section 7436(a)(1), which concerns a determination that "one or more individuals performing services for such person are employees".  However, respondent does not contend--and could not plausibly contend--that there was any actual controversy on the issue of whether the individuals were employees for the self-reported quarters.  Petitioner contended that for <u>all</u> periods it was the common law employer of the employees; and for the self-reported quarters it reported itself as their employer and reported their wages as such on its employment tax returns.

  c. <u>There was no "actual controversy" as to section 530 treatment</u>.

For all periods (including the self-reported quarters) the IRS purported to determine "that with respect to such individual(s) you are not entitled to relief from employment tax under the treatment described in section 530(a)", and such a determination corresponds to section 7436(a)(2), which concerns a determination that the employer "is not entitled to the treatment under subsection (a) of section

**[*31]** 530". However, for the self-reported quarters there was no actual controversy in connection with any entitlement to section 530 treatment.

Petitioner had no occasion to claim section 530 treatment. As we explained, see supra part II, section 530 treatment is available only where "the taxpayer did not treat an individual as an employee". Sec. 530(a)(1)(A) (emphasis added). Section 530 has no application to an employer who did treat the worker as an employee. For the employer who treated the worker as an employee and has an employment tax issue whose resolution does not turn on the status of the worker, section 530 offers no relief.[12] In petitioner's self-reported quarters, it paid travel expense reimbursements to its admitted employees and did not report those payments as taxable wages. When we later address the issue of whether

---

[12]We acknowledge the circumstance in which an admitted employee receives, in addition to his wages, other amounts that the taxpayer-employer contends were paid in another capacity--e.g., not as wages to him as an employee but rather as rent for tools paid to him as a lessor. See SECC Corp. v. Commissioner, 142 T.C. 225 (2014). In that circumstance there is a dispute about the status of the employee in connection with the payment. He is an admitted employee as to the wages he receives, but the dispute is about whether, in receiving the other amounts, he is properly characterized not as an employee but as a lessor. Such a dispute does concern worker status, and a determination that he received those amounts as a lessor and not as an employee will support jurisdiction under section 7436(a)(1). Likewise, a determination that section 530 relief is not available will support jurisdiction under section 7436(a)(2). Here, in the self-reported quarters, the travel expense reimbursements were (like the wages) paid to workers as employees, and their status in that connection as employees was not in dispute.

[*32] employment tax is due on those payments for the self-reported quarters, the issue will not be affected by section 530.  Rather, for the periods in which petitioner <u>did</u> treat its workers as employees, it has no possible valid basis[13] for invoking section 530.

Moreover, petitioner in fact did not invoke section 530 for the five self-reported quarters.  Respondent's contrary contention relies on the July 2015 submission, which is the only circumstance in which petitioner did invoke section 530--but petitioner did so only for the eleven Gevity-reported quarters.  The cover letter stated that "[t]he contract between Reflectxion and Gevity" was "in place <u>through the third quarter of 2010</u>" and argued that "Reflectxion should be subject to Section 530 relief from withholding <u>for these [Gevity-reported] periods</u>."  (Emphasis added.)   The attached "List of Authorities" quoted section 530 and then argued about its effect "[d]uring the period that Reflectxion had contracted with Gevity".  The attachment further stated that "Reflectxion should be protected by Section 530 for all the period[s] <u>for which Gevity's</u>

_____

[13]Respondent acknowledges that any section 530 argument for petitioner's self-reported quarters would be invalid--perhaps even "frivolous"--but contends that a determination denying a frivolous section 530 argument could support jurisdiction under section 7436(a)(2).  We assume this is true, provided that the taxpayer actually made the frivolous contention so that there was an "actual controversy" about it.  Here there was no such contention by petitioner for the self-reported quarters.

**[\*33]** <u>contract was in effect</u>". (Emphasis added.) It projected that, in the Tax Court, petitioner would contend that "section 530 applies to the period <u>covered by the Gevity contract</u>". (Emphasis added.)

We think respondent's different reading of petitioner's June 2015 submission--discerning in it a section 530 argument in connection with the self-reported quarters--is strained, ignores the explicit description of petitioner's actual section 530 argument, and makes unwarranted interpolations. It is true that, in the section of the "List of Authorities" that is entitled "Disputes over the Application of Section 530 of the Revenue Act of 1978 Can Be Resolved in Tax Court", petitioner stated an intention to "file a Petition in Tax Court * * * with respect to the tax periods in issue", thus evidently including the self-reported quarters. If we understand respondent's point, he seems to contend that, since a petition could be filed only for periods for which there had been a "determination" under section 7436(a), such a statement must mean to imply that petitioner's section 530 argument applied to the self-reported quarters.

However, what petitioner explicitly contended was "both that section 530 applies <u>to the period covered by the Gevity contract</u>, and, for all the years", that

[*34] other arguments[14] applied. Since these other arguments are not possible

subject matter for a "determination" under section 7436(a), the IRS's rejection of

them could not--in the absence of such a "determination"--support jurisdiction

over a Tax Court petition. Thus, petitioner's forecast that it would press these

contentions in connection with the self-reported quarters in a Tax Court suit under

section 7436(a) was mistaken. However, petitioner asserted these other arguments

"for all the years", including the Gevity-reported quarters. For the Gevity-reported

quarters, IRS "determinations" were expected and a Tax Court petition was

reasonably forecast. For such a petition, the Tax Court <u>would</u> have jurisdiction for

the Gevity-reported quarters; and, if petitioner's principal arguments for those did

not carry the day, the Tax Court could, as to the Gevity-reported quarters,

"determine * * * the proper amount of employment tax under such determination",

sec. 7436(a), including addressing petitioner's other arguments under sections 62

and 132. It was thus sensible to anticipate Tax Court litigation about all the

arguments, and petitioner's imprecision or inaccuracy about the justiciability of

---

[14]The other arguments that petitioner made were that it had, "for all the years, its reasonable expectation that travel expenses would be incurred, and its reasonable belief that these payments met the requirements of both the Code section 62(c) regulations [concerning "reimburseable arrangements"] and Treas. Reg. § 1.132-5(a)(1)(v) and (vi), and were excludable from wages under Code section 132 [concerning "fringe benefits"]." These other arguments had no evident relation to section 530.

**[*35]** the self-reported quarters per se does not warrant imputing to those self-reported quarters the section 530 contention that petitioner explicitly restricted to the Gevity-reported quarters.

Consequently, the IRS's purported issuance of a "determination" on the section 530 issue for the self-reported quarters addressed an uncontroverted matter. There was no "actual controversy", and we do not have jurisdiction over the self-reported quarters.

To reflect the foregoing,

An appropriate order will be issued.